Eric S. Dwoskin (admitted *pro hac vice*)
edwoskin@dwowas.com
**DWOSKIN WASDIN LLP**
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
Phone: (561) 849-8060

Robert G. Loewy (SBN 179868)
rloewy@rloewy.com
**LAW OFFICES OF ROBERT G. LOEWY, P.C.**
20 Enterprise, Suite 310
Aliso Viejo, CA 92656
Tel: (949) 468-7150

*Attorneys for Plaintiff and the putative class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SUELLEN CRANO, individually and on behalf of others similarly situated,

*Plaintiff,*

vs.

SOJERN, INC.,

*Defendants.*

Case No. 3:25-CV-2600-JSC

**PLAINTIFF'S OPPOSITION TO DEFENDANT SOJERN, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

| | |
|---|---|
| Date: | August 21, 2025 |
| Time: | 10 a.m. |
| Courtroom: | 8 |
| Judge: | Hon. Jacqueline Scott Corley |

# TABLE OF CONTENTS


**STATEMENT OF ISSUES TO BE DECIDED .............................................. VII**

**INTRODUCTION .............................................................................................. 1**

**BACKGROUND ................................................................................................. 1**

**ARGUMENT ....................................................................................................... 2**

**I. This Court Has Article III Jurisdiction. ....................................................... 2**

**II. Plaintiff States Plausible Claims ................................................................ 6**

A. Plaintiff States a Plausible CIPA Claim. ............................................................ 6

1. Sojern's Consent Arguments Fail. ............................................................ 7

i. Sojern's Argument Is Based on Extrinsic Documents. ............................ 7

ii. Sojern's Documents Do Not Show Consent. ........................................... 8

iii. Consent Is a Fact Issue Inappropriate for Rule 12. ................................ 9

iv. Plaintiff's CIPA Claim Does Not Require the Absence of Consent. ..... 10

2. Sojern's Other CIPA Arguments Fail. ..................................................... 11

i. The "Party Exception" Does Not Apply. ............................................... 13

ii. Sojern's Clause One Argument Is Beside the Point. .............................. 14

iii. Sojern Intercepted the "Contents" of Communications ......................... 15

iv. Sojern Intercepted Communications "In Transit." ................................ 17

v. Plaintiff's CIPA Claim Is Timely .......................................................... 19

B. Plaintiff States Her UCL Claim ...................................................................... 19

C. Plaintiff States Her Unjust Enrichment Claim ............................................... 21

D. Plaintiff States Her ECPA Claim .................................................................... 22

E. Plaintiff States Her Invasion of Privacy Claim .............................................. 22

F. Plaintiff May Pursue Equitable Remedies ....................................................... 24

**CONCLUSION ................................................................................................. 25**

# TABLE OF AUTHORITIES

## CASES

*A.J. v. LMND Med. Grp.*, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) ...............22
*Ade v. Viki, Inc.*, 2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) ..............................9
*Ambriz v. Google, LLC*, 2025 WL 830450 (N.D. Cal. Feb. 10, 2025) ...................17
*Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050 (S.D. Cal. 2023)....13
*Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075 (S.D. Cal. 2023....9, 19
*Balletto v. Am. Honda Motor Co.*, 2023 WL 7026931 (N.D. Cal. Oct. 24, 2023)..13
*Belyea v. GreenSky, Inc.*, 2023 WL 8701311 (N.D. Cal. Dec. 15, 2023)...............24
*Brown v. Google LLC*, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021)...................20
*Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023).........................8
*Bruton v. Gerber Prods. Co.*, 703 F. App'x 468 (9th Cir. 2017)...........................21
*Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023) ...18
*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021)...........................20
*Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015 (N.D. Cal. 2019)........................19
*D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023)......18
*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023)....................22
*Doe v. Microsoft Corp.*, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)............21
*Edwards v. MUBI, Inc.*, 2025 WL 985130 (N.D. Cal. Mar. 31, 2025).....................4
*Esparza v. Kohl's, Inc.*, 2024 WL 1152732 (S.D. Cal. 2024)..................................9
*Fan v. NBA Properties Inc.*, 2024 WL 1297643 (N.D. Cal. 2024)..........................9
*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797 2005).....................................19
*Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023)..6, 15

*Graham v. Cent. Garden & Pet Co.*, 2023 WL 2744391 (N.D. Cal. Mar. 30, 2023) ....................25
*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988 (2015) ....................21
*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) ....................23
*Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1 (1994) ....................23
*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)......4, 23
*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................4
*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022)......15, 23
*In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024)............20
*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014)....................15
*Int'l Fed'n Pro. & Tech. Eng'rs, Loc. 21, AFL-CIO v. Superior Ct.*, 42 Cal. 4th 319 (2007)....................23
*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022)...........15
*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023)..............12, 13
*Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023) ....................3
*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ....................7
*Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011) ....................19
*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)..........4
*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ....................25
*Mata v. Zillow Grp., Inc.*, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024)...............21
*Matera v. Google Inc.*, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ....................15
*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011)....................6
*Mendia v. Garcia*, 768 F.3d 1009 (9th Cir. 2014) ....................6
*Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225 (9th Cir. June 20, 2025)....16

*Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) ......... 13
*O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) ......... 4
*Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158 (9th Cir. 2022) ......... 7
*R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994 (N.D. Cal. June 23, 2025) ......... 17, 23
*Recycle for Change v. City of Oakland*, 856 F.3d 666 (9th Cir. 2017) ......... 3
*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ......... 6, 16, 18
*Ribas v. Clark*, 38 Cal. 3d 355 (1985) ......... 13
*S.D. v. Hytto Ltd.*, 2019 WL 833359 (N.D. Cal. May 15, 2019) ......... 15
*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ......... 24
*Soo v. Lorex Corp.*, 2020 WL 5408117 (N.D. Cal. Sept. 9, 2020) ......... 21
*St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ......... 23
*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ......... 2
*Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552 (D. Ariz. Jan. 28, 2025) 20
*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ......... 3
*Turner v. Nuance Commc'ns*, 735 F. Supp. 3d 1169 (N.D. Cal. 2024) ......... 13
*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) ......... 7
*Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (C.D. Cal. 2023) ......... 18
*Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472 (C.D. Cal. 2023) ......... 13
*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018) ......... 23
*Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517 (9th Cir. 2023) ......... 6
*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) ......... 13
*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) ......... 13, 14

**STATUTES**

18 U.S.C. § 2511 .......................................................................................22
18 U.S.C. § 2520 .......................................................................................24
28 U.S.C. § 1404 .........................................................................................2
Cal. Civ. Code § 53.5 ...............................................................10, 11, 21, 23
Cal. Penal Code § 631 ...............................................................6, 10, 12, 18

**TREATISES**

Wright & Miller, Federal Practice & Procedure ..............................................3

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. III .........................................................................................2

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiff asks the Court to rule on the following issues:

1. Whether federal courts have jurisdiction over this dispute under Article III of the U.S. Constitution, including whether the privacy injury caused by Sojern's interception of Plaintiff's communications is an "injury in fact" that is "fairly traceable" to Sojern;
2. Whether Plaintiff states a California Invasion of Privacy Act, Cal. Penal Code § 631 claim;
3. Whether Plaintiff states a Cal. Bus. & Prof. Code § 17200 (UCL) claim;
4. Whether Plaintiff states an unjust enrichment claim;
5. Whether Plaintiff states an Electronic Communications Privacy Act ("ECPA") 18 U.S.C. § 2511(1) claim;
6. Whether Plaintiff states an invasion of privacy claim; and
7. Whether Plaintiff may pursue equitable remedies.

Plaintiff Suellen Crano, individually and on behalf of all others similarly situated, hereby submits her opposition to Defendant Sojern, Inc.'s ("Sojern") motion to dismiss Plaintiff's First Amended Complaint [ECF 28].

## INTRODUCTION

Sojern developed tracking technology to track consumers' hotel room reservations, build invasive profiles of their likes and dislikes, and target them with marketing across the internet. The technology functions by intercepting consumers' communications with hotels during the room reservation process and transmitting that information to Sojern. The data Sojern intercepts identifies both (1) the individual consumer and (2) details about their hotel room reservations. Sojern intercepted Plaintiff's communications with hotels. Plaintiff now asserts claims under the California Invasion of Privacy Act ("CIPA") and other state and federal laws on behalf of herself and a putative class of similarly situated individuals.

## BACKGROUND

Sojern provides online tracking technology (the "Sojern Tracking Pixel") to hotels. ECF 19 ("FAC") ¶¶ 1-2. When users book a hotel room online, they send messages to the hotel's website containing information regarding, among other things, the property they wish to stay at, the room(s) they wish to reserve, the date(s) they will check in and depart, the number of individuals in the room, etc. *Id.* ¶¶ 45-50. The Sojern Tracking Pixel intercepts those communications, pairs them with a unique identifier identifying the individual consumer, and sends that information to Sojern in San Francisco. *Id.* ¶¶ 20-55. Sojern uses the information so obtained: (1) to create profiles of individual consumers' preferences so that Sojern can later target them with advertising; and (2) for its own internal research and product development and improvement purposes. *Id.*

Plaintiff booked Hilton and Marriott hotel rooms using their online booking

platforms from her device in California. *Id.* The Sojern Tracking Pixel was operative on those websites. *Id.* ¶¶ 4, 41-55. Each time Plaintiff reserved a hotel room, the Sojern Tracking Pixel was surreptitiously installed on her device in California and captured her communications with Hilton and Marriott in the manner described above. *Id.* ¶ 4. Plaintiff did not consent to these interceptions. *Id.* Additionally, Plaintiff is a member of Hilton's and Marriott's loyalty programs and has accrued loyalty points that can be spent on future hotel stays. *Id.* Plaintiff cannot use her accrued loyalty points to book hotel rooms in the future without Sojern intercepting her communications with the hotels in violation of state and federal law. *Id.*

## ARGUMENT

### I. This Court Has Article III Jurisdiction.

Sojern moved to dismiss pursuant to Rule 12(b)(1) on the grounds that federal courts lack jurisdiction over this dispute under Article III of the U.S. Constitution. ECF 28 at 6-8 (arguing that "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."). Under Article III, federal courts have the authority to resolve "cases" and "controversies." U.S. Const. Art. III. For a dispute to be a "case" or "controversy" under Article III, the party invoking federal jurisdiction must show "injury in fact, causation and redressability." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998). Sojern argues that the Court lacks Article III jurisdiction because "Plaintiff fails to plead any injury fairly traceable to Sojern." ECF 28 at 6-8.

As an initial matter, Sojern's Article III argument is contrary to its litigation position to date. Sojern moved to transfer pursuant to 28 U.S.C. § 1404(a), arguing that "this case belongs in the Eastern District of Virginia." ECF 17 at 3. The Eastern District of Virginia is an Article III court, and thus Sojern's requested transfer

presupposes that this dispute satisfies Article III and all of its component requirements. *C.f.* Wright & Miller, Federal Practice & Procedure § 3845 (noting that § 1404(a) requires the transferee court to have subject-matter jurisdiction). Sojern cannot tell the Court that "this case belongs in [a federal court]" while seeking a transfer (ECF 17 at 3), while simultaneously seeking dismissal on the grounds that federal courts lack jurisdiction under Article III of the U.S. Constitution.

Putting that tension aside, it is unclear whether Sojern is challenging causation *and* injury in fact, or only the former. On the one hand, there are stray statements in Sojern's brief expressly targeting injury in fact. ECF 28 at 7 ("Plaintiff fails to make specific allegations sufficient to establish injury-in-fact."). On the other hand, the actual argument in Sojern's brief is limited to the issue of causation (and the sub-issue of traceability). ECF 28 at 7-8. Out of an abundance of caution, Plaintiff will address both elements.

***Injury-In-Fact*** Sojern's injury-in-fact argument is underdeveloped and therefore waived. *E.g.*, *Recycle for Change v. City of Oakland*, 856 F.3d 666, 673 (9th Cir. 2017) (holding that an argument not developed in a party's briefs had been waived). In any event, this is a privacy case alleging that Sojern unlawfully intercepted Plaintiff's private and personally identifiable information in violation of various state and federal laws. Putting aside that Sojern took the data without compensating Plaintiff—and thus caused Plaintiff an *economic* injury, *see* FAC ¶¶ 56-73)—the intangible privacy injury alone is sufficient to show an injury in fact for purposes of Article III. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("disclosure of private information" is an intangible harm that satisfies Article III's injury-in-fact requirement); *Jones v. Ford Motor Co.*, 85 F.4th 570, 573-574 (9th Cir. 2023) ("With respect to constitutional injury-in-fact, the relevant law is settled[;] [a] statute that codifies a common law privacy right gives rise to a concrete

injury sufficient to confer standing."); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("[V]iolations of the right to privacy have long been actionable at common law" and thus give rise to Article III standing); *In re Facebook, Inc., Consumer Priv. User Profile Litig*., 402 F. Supp. 3d 767, 784-785 (N.D. Cal. 2019) ("[T]he Ninth Circuit has repeatedly explained that intangible privacy injuries can be redressed in the federal courts."); *Edwards v. MUBI, Inc.*, 2025 WL 985130, at *3 (N.D. Cal. Mar. 31, 2025) ("The disclosure of private information [via online tracking technology] is an 'intangible harm' that satisfies Article III standing"). Thus, to the extent Sojern is making an injury-in-fact argument, it should be rejected.

***Causation and Traceability***. Sojern's causation argument fares no better. "Proximate causation is not a requirement of Article III standing[.]" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). Thus, "[t]he causation chain does not fail solely because there are several links or because a single third party's actions intervened." *O'Handley v. Weber*, 62 F.4th 1145, 1161 (9th Cir. 2023).

The privacy injury at issue is directly traceable to Sojern. Sojern developed the Sojern Tracking Pixel for the purpose of tracking consumers' hotel reservations across the internet and using that data for marketing purposes and its own pecuniary gain. FAC ¶¶ 2, 32-55. Sojern enlists hotels to join its network and install its tracking technology on their websites. *Id.* ¶ 34. "Once installed on a hotel's online property, the Sojern Tracking Pixel automatically collects personal information from guests visiting the hotel's websites and shares that information with Sojern." *Id.* ¶ 35. The information collected by Sojern includes room reservation details and unique identifiers identifying the individual guest(s). *Id.* ¶ 36. "Sojern uses this information to create custom audiences for hotel advertising campaigns" and "its own internal

business purposes, including research and product development and improvement." *Id.* ¶¶ 37-38 (emphasis added). "Sojern tracks travelers at every stage of the booking process … to profile, find and target guests to drive hotel revenue and … for … Sojern's financial benefit." *Id.* ¶ 39 (emphasis added). Sojern stores the data it intercepts "in a centralized location (including in its servers in California) where it matches data points and creates detailed profiles on individuals, and then uses those profiles to send direct, targeted advertisements from hotels even when the user did authorize it." *Id.* ¶ 40. In other words, Sojern is the central, but-for cause of the privacy violations at issue—it developed the technology, enlisted participating hotels, intercepted and collected the data at issue, created invasive profiles of users' likes and dislikes, and used that information to target them with marketing across the internet. There is thus no question that the allegations in the complaint show a causal connection between Sojern's conduct and the privacy injuries alleged, and that the challenged actions are fairly traceable to Sojern.

Sojern's arguments to the contrary are without merit. Sojern argues that the complaint does not allege that *Sojern* (rather than Hilton and Marriott) collected the data at issue (ECF 28 at 7), but the complaint *does* allege that the information was intercepted by, and sent to, Sojern (and not Hilton or Marriot or any other hotel). ECF 19 ¶¶ 32-40; *see also id.* ¶¶ 26-30. And even putting aside exactly which entity "collects" the data in the first instance, the central premise of the complaint is that *Sojern* developed a tracking technology that was designed to intercept guest's communications with hotels and transfer that information to *Sojern* so that *Sojern* could compile individual profiles of guest's behavior and preferences and target them with marketing. Sojern attempts to blame the hotels—as if they were *misusing* Sojern's technology—but Sojern created the technology for the exact purpose it was used for and it functioned exactly as Sojern intended.

Moreover, even if Sojern *indirectly* harmed Plaintiff's privacy, as Sojern essentially argues in its brief, that would still satisfy the traceability standard because the connection between Plaintiff's injury and Sojern's conduct (*e.g.*, developing the Sojern Tracking Pixel, enlisting hotels to use it, collecting the data captured by that technology, creating invasive profiles of consumers likes and dislikes, and targeting them with advertising across the internet) is not attenuated. *See Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014); *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011). In *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517 (9th Cir. 2023), the court agreed that the defendant did not cause the alleged injuries in factually inapposite circumstances in which an entity that was not the defendant was solely responsible for the conduct at issue. That case has no application where, as here, *Sojern's* own conduct is the central and but-for cause of the injuries alleged.

## II. Plaintiff States Plausible Claims

### A. Plaintiff States a Plausible CIPA Claim.

CIPA 631(a) contains four independent clauses that outlaw four separate types of conduct: (1) intentional wiretapping; (2) reading or attempting to read or learn the contents or meaning of a message either "willfully and without consent" or "in any unauthorized manner"; (3) using or attempting to use "any information" obtained in violation of clauses one or two; and (4) aiding any person who violates clauses one, two or three. Cal. Penal Code § 631(a). Plaintiff alleges that Sojern violated clauses two and three by surreptitiously intercepting her communications with hotels via hidden online tracking technology. ECF 19 ¶¶ 97-98. Numerous courts have sustained CIPA claims on similar facts. *E.g.*, *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *10 (N.D. Cal. Aug. 22, 2023); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019). The same result is merited here.

**1. Sojern's Consent Arguments Fail.**

Plaintiff alleges she "did not consent" to Sojern intercepting her communications with hotels. ECF 19 ¶ 4. Sojern contests that allegation, arguing that Plaintiff, in fact, consented and, further, that consent "forecloses" her CIPA claim. ECF 28 at 8-9. The Court should reject Sojern's consent argument for four reasons.

**i. Sojern's Consent Argument Is Based on Extrinsic Documents That Cannot Be Considered at Rule 12.**

First, Sojern's consent argument is based entirely on 14 extraneous documents that are the subject of its Request for Judicial Notice [ECF 29] ("RJN"). As explained in Plaintiff's opposition to Sojern's RJN, none of these documents is incorporated into the complaint by reference or subject to judicial notice, and thus none can be considered by the Court at the pleading stage. Absent the documents, all of Sojern's consent arguments fail.

Plaintiff alleges that she did not consent to the disclosures at issue. ECF 19 at ¶ 4. That allegation must be accepted as true at the pleading stage. If Sojern wants to contest that allegation with reference to an external document, it can do that on summary judgment or at trial, not on a motion to dismiss. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (neither incorporation-by-reference nor judicial notice can be used by a defendant to "present their own version of the facts at the pleading stage"); *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1166 (9th Cir. 2022) ("It is improper to accept the truth of matters asserted in incorporated documents only to resolve factual disputes against the plaintiff's well-pled allegations."); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756-57 (N.D. Cal. 2023) ("Plaintiff alleges she was not informed her conversations were being recorded, intercepted, or eavesdropped upon, and did

not consent to monitoring by the third-party when she communicated with Defendant. That is sufficient at this stage.”).

**ii. Sojern’s Documents Do Not Show Consent.**

Second, even if Sojern’s documents were properly before the Court (and they are not), no reasonable consumer would read those documents as providing consent to Sojern’s interception of their identities and room reservation information. For example, the Hilton “Global Privacy Statement” Sojern put before the Court expressly states that Hilton does *not* share room reservation information with third parties. ECF 29 (Exhibit C) at ECF p. 21-22 (Hilton Global Privacy Statement: stating “We do not share customers’ room preferences with third parties” and “We do not share customers’ arrival times with third parties”). Marriott’s Group Global Privacy Statement, in turn, is silent on the issue and thus does not authorize the disclosure of guest’s identities and room reservation information to third parties for advertising purposes; the closest analogue to this information in Marriott’s nomenclature appears to be “Stay Preferences,” which Marriott does not indicate it ever shares with third parties. ECF 29 (Exhibit N) at ECF p. 171 (describing the categories of information it may share, excluding Stay Preferences). And, of course, none of the documents references Sojern or the fact that Sojern is intercepting users’ communications with the hotel in real time and compiling a database of individuals’ likes and dislikes so that they can be targeted with marketing across the internet. No reasonable consumer would read any of these documents as consenting to the conduct at issue. *Cf. Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) (“[C]onsent is only effective if the person alleging harm consented ‘to the particular conduct, or to substantially the same conduct’ and if the alleged tortfeasor did not exceed the scope of that consent”).

### iii. Consent Is a Fact Issue Inappropriate for Rule 12.

Third, courts have repeatedly observed that the issue of consent is not ripe for resolution at the pleading stage. *See*, *e.g.*, *Ade v. Viki, Inc.*, 2024 WL 1880153, at *4 (N.D. Cal. Mar. 28, 2024) ("[T]he issue of consent is not suitable for decision on a motion to dismiss."); *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. 2024) ("Whether reasonable consumers would understand, based on the … Terms of Use or … Privacy Policy, that by using the … website they were consenting to the disclosure of their personally identifiable information … is a question that should be resolved on a fuller factual record."); *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023) (declining to decide consent at Rule 12); *Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *3 (S.D. Cal. 2024) (similar).

The record here highlights the wisdom of these holdings. Plaintiff alleges she did not consent. FAC ¶ 4. Sojern argues she did. ECF 28 at 8-10. In making its argument, Sojern points to a number of documents it found on the internet that Plaintiff may never have seen, let alone agreed to. For example, Sojern seeks to establish that Plaintiff consented to the disclosures on Marriott's website by noticing Marriott's present account creation page (ECF 29 (Exhibit M)) and an archived Marriot Group Global Privacy Statement (ECF 29 (Exhibit N)). But Sojern does not establish when Plaintiff Crano created a Marriott Bonvoy account and thus has not established that the account creation page it seeks to notice is the one that Plaintiff used. Nor does Sojern establish that Plaintiff consented to the archived version of Marriott's Global Privacy Statement through that process, which refers to Marriott Bonvoy Terms and Conditions, not the "Marriott Global Privacy Statement" referred to in Sojern's brief. And, as noted above, the actual text of all of Sojern's documents does not authorize the conduct at issue. Discovery will show what documents were

presented to Plaintiff on each of the hotel websites at issue (or, perhaps, years earlier when Plaintiff signed up to be a Hilton Honors member in 1995), what they said, whether Plaintiff agreed to their terms, and whether the text of those documents can support whatever consent defense Sojern may raise at summary judgment or trial. But a motion to dismiss is not the appropriate vehicle to resolve those issues.

**iv. In any Event, Plaintiff's CIPA Claim Does Not Require the Absence of Consent.**

Fourth, even crediting Sojern's assertion that Plaintiff consented to the disclosures at issue (and she did not), consent does not, as Sojern argues, "foreclose" Plaintiff's CIPA claim. ECF 28 at 8. Plaintiff alleges that Sojern violated CIPA 631(a) clause two (and, derivatively, clause three by using the information so obtained). ECF 19 ¶¶ 97-98. As is clear from the statutory language, Plaintiff's clause two claim requires that Sojern's interception of the communications at issue was done *either* "without consent" *or* "in any unauthorized manner." Cal. Penal Code § 631(a). Sojern's interception of Plaintiff's room reservation information was indeed done in an "unauthorized manner," as, under California law, guest records cannot be disclosed absent "a court-issued subpoena, warrant or order." Cal. Civ. Code § 53.5(a) (the "Guest Records Statute"). Importantly, the Guest Records Statute prohibits disclosure of guest records without court process "[n]otwithstanding any other law." *Id*. Sojern does not (and cannot) argue that it (or Hilton or Marriott or any other hotel that used the Sojern Tracking Pixel) had a "court-issued subpoena, warrant or order" authorizing Sojern's interception of the data at issue, and thus the disclosures were "unauthorized" as a matter of law regardless of whether Hilton's or Marriott's privacy policies purported to allow them.

Sojern argues that its disclosures did not violate the Guest Records Statute because they fall into the narrow exception for the disclosure of "business records" to "third-party service providers." ECF 28 at 16 (citing Cal. Civ. Code §§ 53.5(i)). That is not accurate. Sojern is not a "third-party service provider" under the Guest Records Statute. *See* Cal. Civ. Code §§ 53.5 (f) and (i). The term "third-party service provider" is limited to only those service providers that have "no independent right to use or share the data" beyond the services provided to the hotel (Cal. Civ. Code § 53.5(f))—meaning, the data can only be used for the hotel's benefit. Sojern, in contrast, used the data for its own purposes, including research and product development and improvement. *See* FAC ¶¶ 38. Thus, Sojern is not and cannot be a "third-party service provider" under Cal. Civ. Code § 53.5(f), and the exception in Cal. Civ. Code § 53.5(i) does not apply.

**2. Sojern's Other CIPA Arguments Fail.**

Sojern's advances a variety of additional CIPA arguments beyond consent, including that the "party exception" defense applies, that Sojern did not intercept the "contents" of Plaintiff's communications, that the communications were not intercepted "in transit," and that Plaintiff's claim is untimely. ECF 28 at 10-15. None of these arguments has merit. But before discussing each in turn below, it must be pointed out that many these arguments are based on a repeated mischaracterization of Plaintiff's allegations.

According to Sojern, Plaintiff "admits" that the data was intercepted by *the hotel* (*e.g.*, Hilton or Marriott) and that the hotel thereafter transmitted the data to Sojern. ECF 28 at *e.g.*, 10-11. From this premise, Sojern argues *e.g.*, that the hotel was a "party to the communication" and that the transmissions to Sojern did not occur "in transit." For this supposed "admission," Sojern cites to Paragraph 4 of the FAC. *Id.* (citing FAC ¶ 4). Paragraph 4 does not include an allegation supporting

Sojern's contention, and in fact states that "*Sojern* intercepted Plaintiff's communications" and that the Sojern Tracking Pixel "disclosed th[e] communications to *Sojern*." FAC ¶ 4 (emphasis added). Moreover, numerous allegations throughout the complaint explain, in detail, that the Sojern Tracking Pixel captured Plaintiff's communications in transit and sent them directly to *Sojern*. FAC ¶¶ 26-30 (overviewing the functionality of the tracking technology and stating that it "directs the user's browser to transmit the users' communications with the website to the third-party technology provider"); *id.* ¶¶ 35-36 (alleging that the Sojern Tracking Pixel "automatically collects personal information from guest's visiting a hotel's website and shares that information with Sojern"); *id.* ¶¶ 48-49 ("Sojern contemporaneously intercepts website users' communications with the Hilton and Marriott websites …"). Thus, the Court should ignore Sojern's unsupported assertions that the data in question was intercepted by the hotels in the first instance before being transmitted to Sojern.

Based on this mischaracterization of Plaintiff's allegations, Sojern makes the broad assertion that "any claim for a violation of CIPA must be asserted against Hilton or Marriott," and not Sojern. ECF 28 at 10. That, too, is not accurate. Third-party tracking technology vendors can independently violate CIPA § 631(a) clauses two and three by eavesdropping on a user's communications with a website and using the data obtained thereby. True, the hotels may also have clause *four* liability for enabling the tracking technology vendor's violations. But that does not mean that the primary violator of clauses two and three (*i.e.*, the tracking technology vendor) does not have independent liability. *E.g.*, *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897-98 (N.D. Cal. 2023) ("[I]f a third party listens in on a conversation between the participants (even if one participant consents to the presence of that third party), then the third party is liable under the second prong (and the participant

is often liable under the fourth prong."); *cf. Ribas v. Clark*, 38 Cal. 3d 355, 363 (1985) (explaining that section 631 "was designed to protect a person placing or receiving a call from a situation where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call").

**i. The "Party Exception" Does Not Apply.**

Sojern argues that it cannot have CIPA liability because it was a party to the communications at issue. ECF 28 at 11-12. As an initial matter, this argument is premature, as the "party exception" issue is "an affirmative defense" that "is not appropriate for resolution" on a motion to dismiss. *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *7 (C.D. Cal. Oct. 4, 2024); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (the party exception issue "is a question of fact for a jury, best answered after discovery."); *Augustine v. Lenovo (United States), Inc*., 2023 WL 4938050, at *3 (S.D. Cal. 2023) (similar). But even if the issue was ripe for resolution, Sojern's arguments should be rejected on the merits.

A tracking technology vendor may act as a third-party eavesdropper if they secretly record conversations in real time. *Javier*, 649 F. Supp. 3d at 898-900. With respect to whether the vendor is a third-party eavesdropper, or merely an extension of one of the parties, the proper inquiry is whether the tracking technology vendor "ha[s] the ***capability*** to use its record of the interaction for any other purpose ([unlike] a tape recorder [which] has no independent capability to divulge the recording for any other purpose but that of its owner)." *Id.* at 900 (emphasis added); *see also Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972 (N.D. Cal. 2023) (adopting the "capability" approach); *Balletto v. Am. Honda Motor Co*., 2023 WL 7026931, at *2 (N.D. Cal. Oct. 24, 2023) (same); *Turner v. Nuance Commc'ns*, 735 F. Supp. 3d 1169, 1184 (N.D. Cal. 2024) (same); *Valenzuela v. Super Bright LEDs*

*Inc.*, 2023 WL 8424472, at *7 (C.D. Cal. 2023) (same); *Yoon*, 549 F. Supp. 3d at 1081 (same) Here, the Complaint alleges that Sojern intercepts the information in "real time" and "uses the information collected for its own internal business purpose, including research and product development and improvement." FAC ¶¶ 20, 21, 25, 30, 38. In fact, the complaint specifically alleges that "Sojern is not a party to website user's communications with hotel websites," including because the Sojern Tracking Pixel "does not merely passively record the communications for the hotel's benefit," as Sojern "has the capability to use the information it collects via the Sojern Tracking Pixel for its own purposes, and, in fact, does use that information for its own purposes, including research and development of products that Sojern markets and sells to other hotels." FAC ¶ 96. These allegations are more than sufficient to allege, under Rule 8, that Sojern has the capability of using the intercepted communications for its own purposes and was thus not a party to the communications between Plaintiff and the hotels.

Sojern's caselaw addresses different factual allegations involving analytical tools that are designed to supply data back to the enterprise. ECF 28 at 11 (citing cases). That type of technology has no analog to the Sojern Tracking Pixel, which collects information that Sojern uses: (a) to build invasive profiles of individual user preferences to target them with advertising across the internet; and (b) for its own purposes. Sojern calls Plaintiff's allegation that Sojern uses the data for its internal research and product development and improvement purposes "conclusory." ECF 28 at 11. It isn't. It's the exact language Sojern itself uses to describe its internal use of the data it receives from the tracking technology at issue. Sojern, Privacy Center, https://www.sojern.com/privacy/privacy-policy (last updated April 21, 2025).

**ii. Sojern's Clause One Argument Is Beside the Point.**

Sojern argues that Plaintiff's CIPA claim fails "[f]rom a technical standpoint"

because "[t]he first clause of § 631(a) protects only communications that are made over a 'wire, line, or cable.'" ECF 28 at 12. Plaintiff's CIPA claim, however, is based on violations of clauses two and three, not clause one. ECF 19 ¶¶ 97-98. Unlike clause one claims, claims based on clauses two and three are not limited to a "wire, line, or cable" and instead apply to internet communications. *E.g.*, *Matera v. Google Inc*., 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022). Hence, Sojern's clause one argument is beside the point.

**iii. Plaintiff Alleges Sojern Intercepted the "Contents" of Her Communications with Hotels.**

Sojern argues that it intercepted only "record information" and not the "contents" of Plaintiff's communications with hotels. ECF 28 at 12-13. The term "content" includes "any information concerning the substance, purport, or meaning of [a] communication … 'Contents' refers to the 'intended message conveyed by the communication.'" *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (quoting *In re Zynga Priv. Litig*., 750 F.3d 1098, 1106 (9th Cir. 2014)). Time and again, courts have held that the term includes information exchanged on the internet, including "information regarding the user's browsing history" or that "divulge 'a user's personal interests, queries, and habits on a third-party website.'" *Gershzon*, 2023 WL 5420234, at *12 (quoting *In re Facebook Inc. Internet Tracking*, 956 F.3d at 596, 605). So-called "record" information, on the other hand, "is typically data generated automatically at the sending of the message and is incidental to the use of the communication device." *S.D. v. Hytto Ltd*., 2019 WL 833359, at *6 (N.D. Cal. May 15, 2019). "Examples of record information include the origin of a phone call, a phone call's length, and geolocation data from an app." *Id*. (collecting authorities).

Here Plaintiff alleges the disclosure of her identity and room reservation information, including "information that identified the relevant hotel ID, hotel name/location, hotel room price, number of rooms, check in date, check out date, and the fact that Plaintiff Crano completed her reservations." FAC ¶ 4. This isn't automatically generated "record" information that is populated by the browser as part of an internet protocol; rather, each is the product of *Plaintiff's specific inputs* on the website. FAC ¶¶ 47-49 (alleging that the intercepted communications "are the product of website users affirmatively entering, and interacting with, information on the hotel websites" and are "created by and in response to website users' communicative inputs" and "are not automatically generated"). This is not "record information" (*e.g.*, a data point noting the fact that a communication occurred, or a timestamp generated automatically with each communication). This is the substance of Plaintiff's communications with the hotels—*e.g.*, what property she wanted to visit, what type of room she wanted to stay in, when she would arrive and leave, how many travelers were in her party, and whether she completed the process of making that specific reservation. *Cf. Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025) ("The complaint alleged real-time capture of the contents of Mikulsky's communications on Defendants' website without her consent, not merely the real-time capture of information regarding the characteristics of the communications."); *Revitch, LLC*, 2019 WL 5485330, at *1 ("Revitch requested information from Moosejaw by clicking on items of interest; Moosejaw responded by supplying that information. This series of requests and responses – whether online or over the phone – is communication."). Sojern's CCPA argument is beside the point because, putting aside whether Sojern's conduct also violated the CCPA, the CCPA is not the exclusive remedy to pursue these types of claims and doesn't define record information or content for the purposes of CIPA.

**iv. Sojern Intercepted the Communications "In Transit."**

Sojern argues that it did not read or attempt to read or learn the contents of the messages while they were "in transit." ECF 28 at 13-14. That is not accurate.

As an initial matter, Sojern read or learned the contents of the messages when they were intercepted by the Sojern Tracking Pixel. Though section 631 does not define "read," "attempt to read," or "learn," courts generally conclude that liability under CIPA 631(a) clause two "requires some effort at understanding the substantive meaning of the message, report or communication." *R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994, at *4 (N.D. Cal. June 23, 2025). When the Sojern Tracking Pixel intercepts a user's communication with a website, it necessarily reads and learns the substance of that communication; and the Sojern Tracking Pixel reading and learning the substance of the communication is the same thing as *Sojern* reading or learning it. *Id*. at *5 (citing *Ambriz v. Google, LLC*, 2025 WL 830450, at *4 (N.D. Cal. Feb. 10, 2025) (rejecting argument that Google's software does not learn the contents of communication because, "[w]hen GCCCAI 'learns' the content of the call, that is the same as Google 'learning' it."). Thus, as this Court recently recognized, courts have regularly held that the use of software to eavesdrop on communications is a basis for CIPA § 631 claims. *Id.* (collecting cases).

The FAC includes detailed allegations explaining how the technology intercepted the communications "in transit." FAC ¶¶ 20-31 (alleging, in detail, how tracking technologies cause the user's computer to *contemporaneously* send the user's communications with the website to the third-party technology vendor, including that Sojern's interceptions occurred "concurrent with the communications with the host website") (emphasis added); *id.* ¶ 55 ("By compelling a visitor's browser to disclose event data for booking, alongside the unique individual identifiers described above, [Sojern] … reads or attempts to read or learn the

contents or meaning of any message, report or communication while the same is in transit…”). These allegations must be taken as true at the pleading stage. *Byars v. Goodyear Tire & Rubber Co*., 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (“[T]he [FAC’s] allegation that user’s messages were intercepted in transit is to be taken as true at this stage of the case.”). And the combination of these allegations, and the reasonable inferences that flow therefrom and must be drawn in Plaintiff’s favor, are sufficient to allege interception “in transit.” *See, e.g.*, *D’Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) (“The reasonable inference here, because Vergic apparently receives the chat messages either before or simultaneously with JC Penney, is that Vergic intercepts these messages [in transit]”); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978–79 (C.D. Cal. 2023) (similar factual allegations rendered the allegation of “in transit” interceptions plausible).

Moreover, § 631(a) is written in the disjunctive, imposing liability for eavesdropping on a communication “while [it] is in transit … ***or*** is being sent from, or received at any place within this state.” Cal. Penal Code § 631(a) (emphasis added). Thus, CIPA prevents the interception of communications “while the communication[s] [are] ***either*** ‘in transit’ or [are] ‘being sent from’ and ‘received at’ a place within this state.” *Ribas*, 696 P.2d at 640 (emphasis added); *Revitch*, 2019 WL 5485330, at *2 (same, recognizing disjunctive). The Complaint alleges that the communications originated in, were intercepted in, and were sent to Sojern in, California. FAC ¶¶ 4-5, 23, 26, 55. Thus, based on CIPA’s plain language, even if Plaintiff’s communications were not intercepted “in transit” (and they were), the interceptions are still actionable because the communications were being “sent from, or received at, a place within this state.”

**v. Plaintiff's CIPA Claim Is Timely**

Sojern argues that, even though Plaintiff pleads a violation on April 4, 2024 for her Hilton claims, within the CIPA one-year statute of limitations, Plaintiff's claims are still time-barred because she enrolled in the Hilton Honors program in 1995. ECF 28 at 14-15. Sojern is wrong because "[s]eparate violations of the same right can each trigger its own statute of limitations period." *Balanzar*, 654 F. Supp. 3d at 1082. Plaintiff alleged a timely violation; her CIPA claim based on interception of her communications with Hilton is not time-barred.

Sojern also argues that Plaintiff's Marriott-related claims are untimely. True, Plaintiff booked a Marriott room on or around August 2, 2023, but her claims were tolled based on the delayed discovery doctrine. Under California law, the delayed discovery rule applies when a plaintiff demonstrates that "a reasonable investigation at [the] time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 27 Cal.Rptr.3d 661, 110 P.3d 914, 917 (2005). At the time she booked her Marriott hotel, Plaintiff was unaware that the Sojern Tracking Pixel was capturing her communications with Marriott. FAC ¶¶ 74-77. Thus, Plaintiff's Marriott-related claims are not time-barred. At a minimum, the delayed discovery doctrine presents fact issues that are improper to resolve at Rule 12. *Balanzar*, 654 F. Supp. 3d at 1083.

**B. Plaintiff States Her UCL Claim**

There are "innumerable ways" to allege "lost money or property" for UCL standing, including where a plaintiff "surrenders in a transaction more … than he or she otherwise would have," or has "a present or future property interest diminished." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 321-327 (2011) (overviewing UCL standing); *see also Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1019 (N.D. Cal. 2019) (same). As is particularly relevant here, "privacy harms involving personal

data can constitute an injury to money or property sufficient to provide standing under the UCL." *In re Meta Pixel Tax Filing Cases* ("*In re Meta Pixel Tax*"), 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024); *see also Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552, at *8 (D. Ariz. Jan. 28, 2025) (UCL standing based on disclosure of private information via website tracking technology). And courts addressing similar claims have found UCL standing where the plaintiff alleged: (a) that "a user shares information with the expectation that it will be protected but the recipient does not actually protect it," *In re Meta Pixel Tax*, 724 F. Supp. 3d at 1024; or (b) that "plaintiffs [] suffered a loss of their personal information," *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (citing cases), including where the plaintiffs provided "detailed allegations" on how "the 'cash value' of the data which [defendant] collected 'c[ould] be quantified,'" *Brown v. Google LLC*, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021).

Plaintiff has UCL standing for two separate and independent reasons. First, with respect to the request for a going-forward injunction under the UCL, Plaintiff alleges that she is still a Marriott and Hilton loyalty club member, has accrued loyalty points that have an economic value, and anticipates using those points in the future but cannot do so without Sojern intercepting her communications. FAC ¶ 4. That is an economic injury and a basis for a going-forward injunction.

Second, with respect to the request for restitution for past harms under the UCL, Plaintiff alleges that the data at issue has value and that Sojern took it from Plaintiff without compensating her. FAC ¶¶ 56-73. The Complaint contains detailed allegations regarding how the cash value of Plaintiff's data can be quantified. *Id*. Taking data without compensation is an economic injury. *See In re Meta Pixel Tax*, 724 F. Supp. 3d at1013 ("provid[ing] something of value to [the defendant] and receiv[ing] nothing in return . . . can constitute an economic injury.") Sojern's

contrary authority is simply out of step with "the growing trend across courts" recognizing UCL standing under these circumstances. *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *13 (W.D. Wash. Dec. 19, 2023) (citing cases).

Sojern's other arguments for dismissal are also unavailing. Plaintiff may base her "unlawful" UCL claim on violations of CIPA and the Guest Records Statute. Sojern can violate the Guest Records Statute: (a) as an "agent" of Hilton and Marriott, Cal. Civil Code § 53.5(a); or (b) by aiding and abetting Hilton's and Marriott's violation of the statute, *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *7 (S.D. Cal. Dec. 18, 2024). Plaintiff's "unfair" claim should also survive. There are three UCL "unfair" tests; Sojern contends Plaintiff fails the "balancing" test, waiving any argument under the other two. The balancing test, in turn, is unsuitable for resolution on Rule 12. *Soo v. Lorex Corp.*, 2020 WL 5408117, at *7 (N.D. Cal. Sept. 9, 2020) ("The cost-benefit analysis the unfairness prong calls for is 'not properly suited for resolution at the pleading stage'"). In any event, the only basis Sojern asserts for failing the balancing test is that Plaintiff was not harmed. ECF 28 at 17. That is wrong—Plaintiff has been harmed for all of the reasons explained above, including the privacy injury (which can be redressed via actual, statutory, or even nominal damages), Sojern taking her data without compensation, and her present inability to spend her valuable loyalty program points.

### C. Plaintiff States Her Unjust Enrichment Claim

Sojern argues that unjust enrichment is not an independent cause of action under California law. That is no longer the prevailing view. Following a decision by the Supreme Court of California allowing an independent claim for unjust enrichment, the Ninth Circuit has recognized unjust enrichment as a standalone cause of action. *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (reversing dismissal of standalone unjust enrichment claim) (citing *Hartford Cas.*

*Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015) (allowing an independent claim for unjust enrichment) and *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 54, 57 (1996) (same)). Moreover, Plaintiff alleges Sojern benefited from violating Plaintiff's privacy and from taking her data without compensating her. FAC ¶¶ 70-73. *See A.J. v. LMND Med. Grp.*, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegation that defendant benefitted from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to preclude dismissal); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023) (permitting plaintiffs to plead an unjust enrichment claim in a motion to dismiss because plaintiffs allege that their remedies at law are inadequate).

**D. Plaintiff States Her ECPA Claim**

Sojern argues that it cannot be liable under the ECPA because "Hilton and Marriott—parties to the alleged communication—consented to Sojern's involvement." ECF 29 at 17. That is not accurate. One party consent does not overcome ECPA liability where the interception is a crime or tort—the so-called "crime-tort exception" to the ECPA's one-party consent rule. 18 U.S.C. § 2511(2)(d). Because Sojern's (and, for that matter, the hotels') actions are allegedly tortious, and violate the California penal code and the Guest Records Statute, the one-party exemption does not apply. *See Meta Platforms*, 690 F. Supp. 3d at 1078 (holding that the "one-party consent exemption" does not apply when the party acts for the purpose of committing a tort).

**E. Plaintiff States Her Invasion of Privacy Claim**

To establish a violation of the constitutional right of privacy, plaintiffs "must establish (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy interest."

*Int'l Fed'n Pro. & Tech. Eng'rs, Loc. 21, AFL-CIO v. Superior Ct.*, 42 Cal. 4th 319, 338 (2007). Courts consider whether "the intrusion [is] 'so serious ... as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *Facebook Internet Tracking*, 956 F.3d at 601 (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)). Because this inquiry is fact intensive, "[c]ourts are generally hesitant to decide claims of this nature at the pleading stage." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799; *see also Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (holding that determinations of whether conduct is highly offensive "is indeed a factual question best left for a jury.").

Plaintiff pleads a privacy interest and a reasonable expectation of privacy in the information Sojern intercepted, including her identity and room reservation information that was confidential as a matter of law under the Guest Records Statute. Further, because Guest Records are protected by law, and cannot be disclosed absent "a court-issued subpoena, warrant or order" (Cal. Civ. Code § 53.5(a)), the interception of that information via hidden tracking technology constitutes an egregious breach of the social norms. In determining offensiveness, courts consider "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994). Plaintiff alleges Sojern collected her private guest records in violation of the Guest Records Statute. FAC ¶ 4. "This intrusion upon [her] privacy included the dissemination of personally identifying information. Drawing all reasonable inferences in [her] favor, the Court cannot conclude as a matter of law such conduct was not highly offensive." *Sussex Publishers*, 2025 WL 948060, at *9 (cleaned up) (quoting *St. Aubin v. Carbon*

*Health Techs., Inc.*, 2024 WL 4369675, at *13 (N.D. Cal. Oct. 1, 2024)). Where, as here, "Defendant implemented a system that surreptitiously allowed third parties to track, record, and intercept [plaintiffs'] and other online [] confidential communications [and] personally identifiable information . . . and use that information for marketing and other purposes ... that is sufficient to allege that Defendant's conduct was highly offensive." *Id.*

### F. Plaintiff May Pursue Equitable Remedies

For a claim for equitable restitution, it is "premature to determine *as a matter of law* the plaintiff ha[s] an adequate remedy at law" where the complaint alleges that "UCL monetary restitution is in the alternative to the legal claims and that no adequate remedy exists at law." *Belyea v. GreenSky, Inc.*, 2023 WL 8701311, at *7 (N.D. Cal. Dec. 15, 2023) (emphasis in original). Plaintiff makes that allegation here. FAC ¶ 118. Her claim for equitable restitution should not be barred under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).

Moreover, the ECPA specifically authorizes the Court to award equitable relief. 18 U.S.C. § 2520(a). Sojern seeks dismissal of Plaintiff's request for equitable relief under *Sonner* and its progeny. ECF 28 at 19 (citing *Sonner* and progeny case). *Sonner* held, under *Erie*, that "federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA")." *Id*. at 837. As such, *Sonner* does not apply to federal statutes that authorize equitable relief because the federal common law does not circumscribe the federal statute's jurisdictional grant. *Id*. at 844 n.7 ("The cases Sonner cites apply when equitable relief is sought under a federal statute, not a state statute"). *Sonner* and its progeny are inapplicable to ECPA equitable relief.

Finally, *Sonner* is inapplicable to forward-looking injunctive relief. *See, e.g.*, *Graham v. Cent. Garden & Pet Co.*, 2023 WL 2744391, at *4 (N.D. Cal. Mar. 30, 2023).

## **CONCLUSION**

For all the foregoing reasons, the Court deny Sojern's motion to dismiss in its entirety. If the Court keeps the case and dismisses any part of the Complaint, the Court "should grant leave to amend" unless the Court "determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Dated this 11th day of July 2025.

DWOSKIN WASDIN LLP

*/s/ Eric S. Dwoskin*

Eric S. Dwoskin (admitted *pro hac vice*)

*Attorneys for Plaintiff and the Putative Class*

**E-FILING ATTESTATION**

I, Eric S. Dwoskin, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Eric S. Dwoskin*
Eric S. Dwoskin