UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUELLEN CRANO,

Plaintiff,

v.

SOJERN, INC.,

Defendant.

Case No. 3:25-cv-02600-JSC

**ORDER RE: MOTION TO TRANSFER VENUE; MOTION TO DISMISS**

Re: Dkt. Nos. 17, 28

Suellen Crano filed this putative class action against Sojern alleging it illicitly tracked her information in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511, and various California laws when she booked hotel rooms on the Hilton and Marriott websites. Sojern moved to transfer venue to the District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a) based on a forum selection clause in the Hilton Honors Terms and the Hilton Site Usage Agreement, or alternatively, to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 17.[1]) In response, Plaintiff filed the now operative Amended Complaint. (Dkt. No. 19.) Following an order to show cause, the parties submitted additional briefing on the motion to transfer and Sojern filed a new motion to dismiss. (Dkt. Nos. 26, 28, 33.) The motions are now fully briefed and came before the Court for hearing on August 21, 2025. Having considered the parties' briefs and arguments, the Court DENIES the motion to transfer and GRANTS the motion to dismiss.

//

//

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

United States District Court
Northern District of California

## BACKGROUND

### A. First Amended Complaint Allegations

Plaintiff alleges she visited the Hilton.com website in April 2024 and the Marriott.com website in August 2023 to search for and book hotels. (Dkt. No. 19 at ¶ 4.) Unbeknownst to her, both Hilton and Marriott had installed Sojern's tracking technology on their websites to collect information contained in her communications with the hotel's websites and provide, among other things, targeted advertising. (*Id.* at ¶¶ 4, 30.) The information collected included the relevant hotel ID, hotel name/location, hotel room price, number of rooms, check-in date, check-out date, and that Plaintiff completed her reservations. (*Id.* at ¶ 4.) Sojern collected this information without Plaintiff's consent. (*Id.*)

### B. Procedural History

Plaintiff originally filed this action in March 2025 bringing claims on behalf of a class of California consumers who had their "personal information collected by Sojern while booking an inn, hotel, motel, or lodginghouse." (Dkt. No. 1 at ¶ 78.) Sojern moved to transfer venue to the District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a) based on a forum selection clause in the Hilton Honors Terms and the Hilton Site Usage Agreement, or alternatively, to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 17.) Two weeks later, Plaintiff filed the now operative First Amended Complaint, adding allegations about her use of the Marriott.com website in addition to the Hilton.com website and pleading claims for: (1) violation of the California Invasion of Privacy Act, Cal. Pen. Code § 631(a); (2) violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 et seq.; (3) unjust enrichment; (4) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) et seq.; and (5) invasion of privacy under the California Constitution.

As Plaintiff did not file a response to Sojern's motion, the Court issued an Order to Show Cause as to whether Plaintiff consented to transfer of the action to the Eastern District of Virginia where her action against Hilton arising out of the same conduct was pending. *See Crano et al v. Hilton Worldwide Holdings Inc. et al.*, No. 25-305-RDA, Dkt. No. 34 (E.D. Va. Feb. 5, 2025). (Dkt. No. 22.) Plaintiff thereafter filed a response to the Order to Show Cause which included an

opposition to the motion to transfer explaining she had filed her Amended Complaint in lieu of a response to the motion and sought to address the issues raised by Sojern by, among other things, adding allegations as to her use of the Marriott.com website. (Dkt. No. 26.) Sojern has since filed a reply to the motion to transfer and a new motion to dismiss which is fully briefed. (Dkt. Nos. 28, 33, 35, 38.) After briefing was complete, Plaintiff filed a notice indicating she has voluntarily dismissed her action against Hilton in the Eastern District of Virginia. (Dkt. No. 37.)

## DISCUSSION

### I. MOTION TO TRANSFER

Sojern moves to transfer venue under 28 U.S.C. § 1404(a) based on a forum selection clause in two agreements governing the terms of Plaintiff's relationship with Hilton: the Hilton Site Usage Agreement and the Hilton Honors Terms. Sojern insists Plaintiff's claims arise from her interaction with the Hilton website and the case should be transferred to the Eastern District of Virginia because: (1) the forum-selection clause encompasses Plaintiff's claims against Sojern, (2) the forum-selection clause is valid and enforceable and specifies "exclusive venue" in the Eastern District of Virginia, and (3) Plaintiff cannot show that public interest factors weigh so heavily against transfer the valid forum-selection clause should be disregarded. (Dkt. No. 17 at 15.)

Under 28 U.S.C. § 1404(a) a district court may "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented .... for the convenience of parties and witnesses." 28 U.S.C. § 1404(a). In considering such a transfer, the court "must evaluate both the convenience of the parties and various public-interest considerations" weighing "the relevant factors and decid[ing] whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62–63 (2013) (quoting 28 U.S.C. § 1404(a)). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* at 63 (cleaned up). Under such circumstances, "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 59-60. By "[e]nforc[ing] ... valid forum-selection clauses,

bargained for by the parties, [the court] protects their legitimate expectations and furthers vital interests of the justice system." *Id*. at 63. Accordingly, when presented with such an agreement, the court must disregard plaintiff's choice of forum and the parties' private interests. *Id*. at 63-64. It instead "consider[s] arguments about public-interest factors only," and "those factors will rarely defeat a transfer motion." *Id*. at 64. Further, "the party acting in violation of the forum-selection clause ... must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id*. at 67.

Sojern contends Plaintiff is a Hilton Honors member who consented to both the Hilton Honors Terms & Conditions, the Site Usage Agreement, and Hilton's Global Privacy Statement. According to Sojern, when a user books at stay on Hilton's website, the user agrees to the Site Usage Agreement and Global Privacy Statement, and Hilton Honors members agree to the Hilton Honors Terms & Conditions as well as the Global Privacy statement. So, argues Sojern, Plaintiff is bound by the forum selection clauses in the Site Usage Agreement and the Hilton Honors Terms & Conditions which provide "any action at law or in equity arising out of or relating to the terms of this Agreement shall be filed only in the United States District Court for the Eastern District of Virginia." (Dkt. No. 18 at 87 (Site Usage Agreement); *see also* Dkt. No. 18 at 100 (Hilton Honors Terms & Conditions).)

**A. Whether There is a Valid Agreement**

The first question is whether the forum selection clause is valid and enforceable. Federal law governs a forum selection clause's validity. *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Here, however, Plaintiff challenges the validity of the agreement containing the forum selection clause as opposed to the clause itself; that is, Plaintiff insists Sojern has not met its burden of demonstrating a valid and enforceable agreement containing the forum selection clause because it has not shown "the presentation of those agreements on Hilton's website was sufficient to provide notice to consumers and bind them to their terms." (Dkt. No. 26 at 15.)

As a threshold matter, neither party discusses what law applies to the contract formation question. Plaintiff assumes, without discussion, that California law applies. (Dkt. No. 26 at 14-

15.) Defendant's reply cites the Ninth Circuit's decision in *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1012 (9th Cir. 2024), which applies California law on contract formation. (Dkt. No. 33 at 7.) The Court thus assumes both parties agree California law applies despite the New York choice of law provision in the Site Usage Agreement. (Dkt. No. 18 at 87.) *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1267 (9th Cir. 2006) (finding parties waive choice of law provision when they proceed on assumption that California law governs). Application of California law is further appropriate here as courts consider "an agreement to arbitrate [] a specialized forum selection clause," *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514, n.4 (9th Cir. 1988), and "[i]n determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849, 855 (9th Cir. 2022). The Court thus applies California law to the contract formation question.

"To form a contract under ... California law, the parties must manifest their mutual assent to the terms of the agreement." *Berman*, 30 F.4th at 855. "Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct." *Id.* "However, '[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Id*. (alteration in original) (quoting Restatement (Second) of Contracts § 19(2) (1981)). "These elemental principles of contract formation apply with equal force to contracts formed online. Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Id.* at 855–56. "As the party seeking to enforce the forum selection clause, [Sojern] "bears 'the burden of proving the existence of an agreement ... by a preponderance of the evidence.'" *Whalen v. NBA Props., Inc.*, No. 25-CV-01030-CRB, 2025 WL 1948591, at *3 (N.D. Cal. July 16, 2025) (quoting *Norcia v. Samsung Telecomms. Am., LLC.*, 845 F.3d 1279, 1283 (9th Cir. 2017) (citation omitted)).

**1. The Site Usage Agreement**

In California, "internet contracts are classified 'by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and

sign-in wraps.'" *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2021)). Here, Sojern contends a link to the Site Usage Agreement was provided to Plaintiff, but she was not required to separately indicate she had read and agreed to the Agreement; rather, "By clicking 'Book Reservation," she agreed to the Site Usage Agreement. (Dkt. No. 33 at 6.) The Court thus employs the inquiry-notice "sign-in wrap" analytical framework. *See Berman*, 30 F.4th at 866 (citing *Sellers*, 73 Cal. App. 5th at 463–64).

> [A]n enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.

*Berman*, 30 F.4th at 856. "Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility." *Berman*, 30 F.4th at 856 (cleaned up).

In support of its motion to transfer, Sojern offers screenshots of the Hilton.com booking website as well as a Declaration from Fjorela Shanti, a senior paralegal in Hilton's Dispute Resolution Legal Department, that Hilton filed in Plaintiff's action against Hilton in the Eastern District of Virginia. (Dkt. No. 18 at Ex. B (ECF 13), Ex. J (ECF 134).[2]) While Sojern included these documents with the motion to transfer, its motion did not address the contract formation issue; instead, Sojern only included the contract formation argument in its reply brief in response to Plaintiff's contention she did not enter an agreement with Hilton containing a forum selection

[2] Sojern requests judicial notice of several documents, including, as relevant here, copies the Hilton.com booking pages and a declaration submitted by Hilton in Plaintiff's action in the Eastern District of Virginia. (Dkt. No. 18.) Judicial notice permits courts to notice an adjudicative fact if it is "not subject to reasonable dispute," meaning the fact is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201). While a court may take judicial notice of matters of public record, "a court cannot take judicial notice of disputed facts contained in such records." *Id.* Because courts routinely take judicial notice of "court filings and other matters of public record," *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.1 (9th Cir. 2006), the Court takes notice of the Shanti Declaration. (Dkt. Nos. 18, Ex. J.) Likewise, because "websites and their contents may be judicially noticed," *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020), the Court notices Hilton.com's website (Dkt. No. 18 at Exs. A, B).

clause.

On reply, Sojern insists Plaintiff was provided reasonably conspicuous notice because the Site Usage Agreement is "hyperlinked, underlined, and in blue text as part of the click-thru process and again hyperlinked (although not underlined) several lines below the "Book Reservation" button. (Dkt. No. 33 at 6 (citing Dkt. No. 18, Ex. B at 1).) Sojern describes Exhibit B as "Hilton.com Reservation Payment Page (Archived), as filed in *Crano v. Hilton Worldwide Holdings, Inc.*, 25-cv-00305-RDA-IDD, Dkt. No. 32-3 (E.D. Va. Jan. 24, 2025)." (Dkt. No. 18 at 2.) Exhibit B is two pages and is reproduced below:

Hilton HONORS

Sign In | Join

Edit stay

Payment and Guest Details

Step 3 of 3

All fields are required unless marked optional.

Payment

Card number

Month ▼ Year ▼

Guest information

First Name

Last Name

Email

Phone

Special requests

Traveling with a pet, service animal, etc.

Add special requests

View optional services ▼

Guarantee and Cancellation Policy

By clicking "Book Reservation," I agree to the Rules and Restrictions, Site Usage Agreement, and acknowledge that Hilton will collect, use, share and transfer my information as set out in Hilton's Global Privacy Statement.

https://web.archive.org/web/20210101175008/https://www.hilton.com/en/book/reservation/payment/ 1/2



United States District Court
Northern District of California

United States District Court
Northern District of California

(Dkt. No. 18 at 13.)

California consumers, click here to learn about Hilton's collection and use of your personal information.

Book Reservation

*In-Room WiFi Internet access may not be complimentary at properties with a resort charge.

How can we help?

Call us, it's toll-free.

Customer Support
Online reservation assistance.

Hilton Honors Discount Terms & Conditions
Global Privacy Statement
Personal Data Requests
Cookies Statement

Site Usage Agreement
Do Not Sell My Information
Modern Slavery and Human Trafficking
AdChoices

©2021 Hilton

(Dkt. No. 18 at 14.)

At oral argument, Plaintiff raised several issues as to Exhibit B and whether Sojern had met its burden of establishing either reasonably conspicuous notice or Plaintiff's assent to the Site Usage Agreement. Two of these arguments are dispositive here. First, Sojern only provides a partial version of what Plaintiff would have seen when booking her reservation; that is, the above screenshots do not accurately reflect the totality of Plaintiff's booking process—the first page begins at "Step 3 of 3" and the page break prevents the viewer from seeing the page as it would have appeared to a user booking a reservation.

Second, Sojern has not established the screenshots reflect what Plaintiff would have seen when she booked in April 2024 as the top of the page includes the Hilton Honors logo and Plaintiff alleges she booked through Hilton.com. (Dkt. No. 19 at ¶ 4.)



(Dkt. No. 18 at 13.) Indeed, the "current version" of the booking page has "Hilton" not "Hilton Honors" at the top. (Dkt. No. 18, Ex. A.) At oral argument, Sojern was unable to explain why the Hilton Honors logo appears on the screenshot Sojern relies on to establish notice to Plaintiff or why only partial screenshots of the booking flow were provided.

Under California law, the question of whether "the website provides reasonably conspicuous notice of the terms to which the consumer will be bound" is "fact-intensive" and is informed by the "totality of the circumstances." *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025) (internal citations omitted). "[U]nder California law— 'even minor differences' in the design elements may make the difference in this fact-intensive analysis. At bottom, when visually analyzing the conspicuousness of an advisal and any hyperlinks, courts must be tuned to the expectations of a reasonably prudent internet user." *Id.* at 710 (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 481 (2021)). Sojern has not provided sufficient evidence for the Court to conduct this "fact-intensive" analysis and therefore has failed to satisfy its burden of demonstrating Plaintiff agreed to Hilton's Site Usage Agreement.

**2. The Hilton Honors Terms & Conditions**

Sojern's argument as to Plaintiff's agreement to the Hilton Honors Terms & Conditions and the forum selection clause in those Terms is even more attenuated. Plaintiff contends she has been a Hilton Honors member since 1995. Apparently conceding it has not offered evidence of what the Hilton Honors Terms provided, if anything, as to a forum selection clause in 1995 when Plaintiff signed up to be a Hilton Honors member, Sojern argues in a footnote that the screenshot attached as Exhibit A to the request for judicial notice includes the line "I also agree to the Hilton Honors Program Terms and Conditions" above the "Book Reservation" button on the Hilton.com website. (Dkt. No. 33 at 6 n.2.) However, as Sojern conceded at oral argument, Exhibit A is a screenshot of the current version the Hilton.com website, not the version in effect when Plaintiff made her reservation on Hilton.com in 2024. Accordingly, Sojern has not offered evidence of a valid agreement between Plaintiff and Hilton based on the Hilton Honors Terms.

***

Because Sojern has not met its burden to demonstrate the existence of a valid agreement

between Plaintiff and Hilton containing a forum selection clause, Sojern's motion to transfer is denied. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 455-56 (9th Cir. 2007) (holding "Holland America does not meet its burden to establish jurisdiction under the Washington forum selection clause" because "the facts and allegations" "are too thin to meet its initial burden to support jurisdiction under the Washington forum selection clause.").

## II. MOTION TO DISMISS

Sojern moves to dismiss the Amended Complaint for lack of Article III standing and failure to state a claim.

### A. Article III Standing

Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203, (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id*. (citations omitted). To establish standing sufficient to satisfy constitutional requirements, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

Sojern insists Plaintiff has failed to demonstrate an injury fairly traceable to it because her allegations do not implicate any wiretapping law or privacy rights. Sojern's argument is at bottom that Plaintiff has failed to state a claim—that is a Rule 12(b)(6) motion to dismiss for failure to state a claim, not a question of Article III standing. *Muslim Advocs. v. U.S. Dep't of Just.*, No. 18-CV-02137-JSC, 2019 WL 3254230, at *7 (N.D. Cal. July 19, 2019). The motion to dismiss for lack of Article III standing is therefore denied without prejudice.

### B. Failure to State a Clim

#### 1. CIPA Claim

California Penal Code § 631 "prescribes criminal penalties for three distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978). These include:

> (1) when a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument,"
>
> (2) when a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit," or
>
> (3) when a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained."

*Yockey v. Salesforce*, 688 F. Supp. 3d 962, 970 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631).

Plaintiff brings a claim under the second and third clauses. As discussed at oral argument, based on the motion to dismiss record as presented, the consent issue cannot be resolved as a matter of law. Sojern's argument that the information at issue was "record information" rather than the contents of Plaintiff's communications is likewise unavailing. Plaintiff alleges Sojern intercepted information "that identified the relevant hotel ID, hotel name/location, hotel room price, number of rooms, check in date, check out date, and the fact that Plaintiff Crano completed her reservations." (Dkt. No. 19 at ¶ 4.) This information is not akin to "page visits" as Sojern suggests, but is instead user created information—where and when Plaintiff was planning to and did stay at a hotel and how many rooms she booked. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) ("URLs are record information when they only reveal a general webpage address and basic identification information, but when they reproduce a person's personal search engine queries, they are contents."); *S.D. v. Hytto Ltd.*, No. 18-CV-00688-JSW, 2019 WL 8333519, at *6 (N.D. Cal. May 15, 2019) ("Examples of record information include the origin of a phone call, a phone call's length, and geolocation data from an app" whereas content "is a person's intended message to another and the essential part of a communication.) (cleaned up).

Plaintiff has nevertheless not adequately alleged a violation of clause two because she has not plausibly alleged Sojern intercepted the communication while it was *in transit*. Cal. Penal Code § 631(a)(2). "'While' is the key word here." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). "[I]nterception under the meaning of the statute must

occur during transmission of the communication." *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *2 (N.D. Cal. June 9, 2023) (cleaned up) (collecting cases). "[T]he crucial question under § 631(a)'s second clause is whether [Plaintiff] has plausibly alleged that [Sojern] read one of [their] communications while it was still in transit, i.e., before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (citing *Mireskandari v. Mail*, 12-cv-02943-MMM (FFMx), 2013 WL 1219559, at *10 n.44 (C.D. Cal. July 30, 2013)). Plaintiff's allegations do not plausibly support an inference her communications were read while in transit; rather, she alleges "a website developer like Hilton and Marriott can use its source code to commandeer the user's computing device, causing the device to contemporaneously in real time and invisibly *re-direct* the users' personally identifiable guest records and communications to third parties like Sojern." (Dkt. No. 19 at ¶ 25 (emphasis added); *see also* ¶ 40 ("Sojern…collects as much information relating to a hotel guest as possible all from different sources …stores that information in a centralized location … where it matches data points and creates detailed profiles.").) Plaintiff thus has not alleged the information is intercepted while in transit and fails to state a claim under Section 631(a)(2).

Because clause three is dependent on a violation of clauses one or two, Plaintiff's clause three claim necessarily fails as well. *See Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978) (stating section 631(a) outlines "criminal penalties for three distinct and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained *as a result of engaging in either of the previous two activities*.") (emphasis added).

Plaintiff's CIPA claim is thus dismissed for failure to state a claim.[3]

**2. Federal Wiretap Act**

The Electronic Communications Privacy Act ("ECPA" or "Federal Wiretap Act"), 18 U.S.C. § 2510 et seq., provides for civil penalties against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire,

[3] The Court declines to address Sojern's statute of limitations arguments given the other grounds for dismissal.

United States District Court
Northern District of California

oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The Federal Wiretap Act is a one-party consent statute. 18 U.S.C. § 2511(2)(d); *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("[T]he consent of one party is a complete defense to a Wiretap Act claim."). Sojern insists Plaintiff cannot state a claim under the Wiretap Act because both Hilton and Marriott—the parties to alleged communication—consented to Sojern's involvement.

Plaintiff counters the "crime-tort" exception to one-party consent applies. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077 (N.D. Cal. 2023) (stating the one-party consent "exception does not apply, however, where the interceptor acts 'for the purpose of' committing any crime or tort in violation of state or federal law."). Plaintiff's crime-tort exception argument is predicated on her CIPA claim and her allegations that Sojern's actions violate California's Guest Records statute, California Civil Code § 53.5(a). (Dkt. No. 35 at 29.) But, as discussed above, Plaintiff's CIPA claim is inadequately pled and thus does not provide a basis for the crime-tort exception.

Plaintiff's reliance on California's Guest Records statute is similarly unavailing. The statute, Civil Code section 53.5(a), provides:

> an innkeeper, hotelkeeper, motelkeeper, lodginghouse keeper, or owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodations, or any employee or agent thereof, who offers or accepts payment for rooms, sleeping accommodations, or board and lodging, or other similar accommodation, shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order.

Cal. Civ. Code § 53.5(a). Sojern insists the statute does not apply to it because it is not an innkeeper or hotelkeeper; that is, while the statute might apply to Hilton or Marriott it does not apply to Sojern. Neither the amended complaint nor Plaintiff's opposition addresses this issue. Nor does Plaintiff's amended complaint or opposition address how the records at issue constitute guest records. Civil Code § 53.5(c) defines "guest record" as "any record that identifies an individual guest ... including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate

United States District Court
Northern District of California

number." Plaintiff has not alleged facts that plausibly support an inference "the hotel ID, hotel name/location, hotel room price, number of rooms, check in date, check out date, and the fact that Plaintiff Crano completed her reservations" constitute a guest record under Section 53.5(c). *See Snyder v. G6 Hosp. LLC*, No. 5:24-CV-02423-AH-(SHKX), 2025 WL 1254382, at *4 (C.D. Cal. Apr. 14, 2025) (stating plaintiff had "not explain[ed] how" the "dates of the trip, number of guests, username, etc., constituted guest records under California Civil Code § 53.5.").

Accordingly, Plaintiff's Federal Wiretap Act claim is dismissed for failure to state a claim.

**3. Invasion of Privacy Under the California Constitution**

To bring a claim for invasion of privacy under the California Constitution, plaintiffs must allege "(1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is so serious ... as to constitute an egregious breach of the social norms such that the breach is highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (cleaned up). Plaintiff contends Sojern intruded upon her privacy interest because "her identity and room reservation information [] was confidential as a matter of law under the Guest Records Statute." (Dkt. No. 35 at 30.) This argument fails for the same reason it does with her Federal Wiretap Act claim—she has not shown that the information Sojern allegedly tracked is covered by Section 53.5. Accordingly, her invasion of privacy claim is dismissed for failure to state a claim.

**4. UCL Claim**

The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code, § 17200. The statute is written in the "disjunctive" and establishes three varieties of unfair competition, with each as a basis for liability. *Cel-Tech Comm'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation omitted). Plaintiff brings a claim under the lawful and unfair prong. (Dkt. No. 19 at ¶¶ 105, 107.)

As to the unlawful prong, Plaintiff's claim is predicated on her CIPA claim and her Civil Code Section 53.5 claim and thus must be dismissed for the same reason as those claims. *See Aleksick v. 7-Eleven, Inc.*, 205 Cal.App.4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails").

As to the unfair prong, Plaintiff alleges Sojern's "'unfair' acts and practices include its violation of privacy interests protected by the statutes identified above [referring to CIPA and Section 53.5]." (Dkt. No. 19 at ¶ 107.) Plaintiff further alleges Sojern's conduct is an unfair business practice "because these practices offend established public policy and hurt Plaintiff and class members, which cannot be reasonably avoided, and that outweighs any benefit to consumers or competition. The conduct also is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers." (*Id.* at ¶ 108.) Plaintiff's conclusory allegations fails to state a claim under the unfair prong. *See Warren v. PNC Bank Nat'l Ass'n*, No. 22-CV-07875-WHO, 2023 WL 3182952, at 2 *10 (N.D. Cal. Apr. 30, 2023) ("[t]he 'unfair' prong requires proving either: (1) the public policy which is a predicate to a consumer unfair competition action is tethered to specific constitutional, statutory or regulatory provisions, or (2) that the challenged business practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.") (cleaned up). Plaintiff's allegations merely parrot the statutory language and therefore fail to state a claim. *See Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644 (9th Cir. 2014), as amended (Jan. 26, 2015) (rejecting argument "[c]onclusory allegations that merely recite the statutory language are adequate.").

Accordingly, Plaintiff's UCL claim is dismissed for failure to state a claim.

**5. Unjust Enrichment Claim**

Under California law, unjust enrichment is "synonymous with restitution" and describes "the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Plaintiff alleges Sojern unjustly received an economic benefit from its collection of Plaintiff's personal and private data without her consent. "But because [] plaintiff[] ha[s] not stated a claim against [Sojern] for any unlawful conduct, [she] ha[s] also failed to state an unjust enrichment claim." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 849 (N.D. Cal. 2024).

Accordingly, Plaintiff's unjust enrichment claim is dismissed.

**CONCLUSION**

For the reasons stated above, the Court DENIES Sojern's motion to transfer and GRANTS

Sojern's motion to dismiss with leave to amend the claims alleged in the amended complaint. Plaintiff may not add new defendants or claims without further leave of Court.

Any amended complaint is due by October 16, 2025.

This Order disposes of Docket Nos. 17, 28.

**IT IS SO ORDERED.**

Dated: September 19, 2025

JACQUELINE SCOTT CORLEY
United States District Judge