SPENCER PERSSON (State Bar No. 235054)
spencerpersson@dwt.com
MONICA GIBBONS (State Bar No. 348888)
monicagibbons@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
SOJERN, INC.

**IN THE UNITED STATES DISTRICT COURT**

**THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUELLEN CRANO, individually and on behalf of other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>SOJERN, INC.,<br><br>Defendant. | Case No. 3:25-cv-2600-JSC<br><br>**DEFENDANT SOJERN, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>DATE: March 19, 2026<br>TIME: 10:00 AM<br>CTRM: 8, 19th Floor<br><br>Action Filed: March 17, 2025<br>SAC Filed: October 16, 2025 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 2

II. STATEMENT OF ISSUES TO BE DECIDED—L.R. 7-4(a)(3) .......... 3

III. FACTUAL ALLEGATIONS AND BACKGROUND .......... 3

A. Sojern Is a Travel Marketing Platform That Serves at the Behest of Its Users .......... 3

IV. LEGAL STANDARD .......... 5

V. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER RULE 12(b)(6) .......... 5

A. Plaintiff's CIPA Claims Fail. .......... 5

1. The Rule of Lenity Precludes Reading CIPA as Applying to the Conduct at Issue Here. .......... 5

2. Both CIPA Claims Fail Because They Fall Outside the Statute of Limitations. .......... 7

3. Plaintiff's Section 631(a) Claim Fails. .......... 9

4. Plaintiff's Section 632 Claim Fails Because Her Communications Were Not Confidential. .......... 11

B. Plaintiff's UCL Claim Fails. .......... 14

C. Plaintiff's Unjust Enrichment Claim Fails. .......... 16

D. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail. .......... 16

E. Plaintiff's ECPA Claim Fails for the Same Reasons as Her CIPA Claims .......... 18

F. Equitable Remedies Are Unavailable to Plaintiff. .......... 19

VI. CONCLUSION .......... 19



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 5

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 16

*Bayview Hunters Point Residents v. Tetra Tech EC, Inc.*,
2021 WL 1222164 (N.D. Cal. Mar. 31, 2021) .......... 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 7

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 14, 16

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-CV-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... *passim*

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 18

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013) .......... 11

*Graham v. Wells Fargo Bank, N.A.*,
2017 WL 86013 (N.D. Cal. Jan. 10, 2017) .......... 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 16, 17

*Hill v. Nat'l Collegiate Athletic Assn.*
7 Cal.4th 1 (1994) .......... 16

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 17

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 14



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ... 17

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ... 18

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ... 14

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ... 8

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) ... 11

*Phillips v. Brooklyn Bedding LLC*,
2024 WL 2830663 (N.D. Cal. Mar. 28, 2024) ... 18

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990) ... 10

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ... 11

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ... 18

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ... 14

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ... 18

*Tamraz v. Bakotic Pathology Assocs., LLC*,
2022 WL 16985001 (S.D. Cal. Nov. 16, 2022) ... 14

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) ... 8

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ... 9

*Warren v. PNC Bank Nat'l Ass'n*,
671 F. Supp. 3d 1035 (N.D. Cal. 2023) ... 15

**Statutes**

18 U.S.C. § 2511(1), *et seq.* ... 1, 15, 16, 18

Cal. Bus. & Pro. Code § 17200, *et seq.* ... 1



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Cal. Civ. Code
§ 53.5 ........ *passim*
§ 53.5(i) ........ 12, 17
§ 53.5(a) ........ 11
§ 53.5(f) ........ 12
§§ 1798.100–1798.199 ........ *passim*
§§ 1798.100-1798.196 ........ 5
§§ 1798.140(v)(1)(A) ........ 5
§ 1798.150(c) ........ 5, 6
§ 1798.185(d) ........ 6

2020 Cal. Legis. Serv. Prop. 24 (2020) ........ 6

Cal. Pen. Code
§§ 630–637.5 ........ *passim*
§ 631(a) ........ 1, 2, 8, 10
§ 632(a) ........ 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 1, 3, 4, 5

**Other Authorities**

2018 Cal. Legis. Serv. Ch. 55 (A.B. 375) ........ 5



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 19, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Jacqueline Scott Corley of the above-titled Court, located at 450 Golden Gate Avenue, Courtroom 8, 19th Floor, San Francisco, California 94102, Defendant Sojern, Inc. ("Sojern") will and hereby does move this Court for an order dismissing Plaintiff's Second Amended Complaint (the "SAC") with prejudice for failure to state a claim under Rule 12(b)(6) (the "Motion").

Plaintiff now asserts seven causes of action—purportedly on behalf of two putative classes comprised of "[a]ll residents of the United States" and "[a]ll California residents who had their personal information collected by Sojern while booking an inn, hotel, motel, or lodging house," (SAC ¶ 95)—for (1) violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a); (2) violations of CIPA § 632; (3) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Pro. Code § 17200, *et seq.*; (4) common law unjust enrichment; (5) violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1), *et seq.*; (6) invasion of privacy; and (7) intrusion upon seclusion. This Motion is made on the grounds that this case should be dismissed with prejudice because Plaintiff has failed to state a claim upon which relief can be granted.

This Motion is based upon this Notice of Motion, and the supporting Memorandum of Points and Authorities, the pleadings and other papers on file herein, and upon such oral argument as the Court may entertain at the hearing on this Motion.

DATED: January 15, 2026

DAVIS WRIGHT TREMAINE LLP
SPENCER PERSSON
MONICA GIBBONS

By: /s/ Spencer Persson
Spencer Persson
Attorneys for Defendant Sojern, Inc.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

"The language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies." *Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561-VC, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). The mess is on full display in this case, where Plaintiff Suellen Crano ("Plaintiff") contends that Hilton and Marriott's use of Sojern's advertising technology on the Hilton and Marriott websites—technology that merely facilitates the service of advertisements to Plaintiff relating to Hilton and Marriott hotels she has previously browsed—constitutes wiretapping. This Court should reject Plaintiff's attempts to impose criminal liability where there is none by construing a wiretapping law meant to apply to telephone lines (and known criminals' use of those lines) in a manner wholly inconsistent with California's omnibus privacy law, the California Consumer Privacy Act ("CCPA"). The CCPA expressly addresses the use of data as alleged in Plaintiff's Second Amended Complaint ("SAC"), and companies were given five years to comply with that law and the accompanying regulations. There is simply no basis for construing CIPA to impose criminal liability for standard internet activity by construing it to have an opt-in requirement that runs directly counter to the CCPA's opt-out regime.

But even if the Court ignores the rule of lenity and applies the poorly written and ambiguous CIPA to activities permitted under the CCPA, the Court should still dismiss the SAC with prejudice. This Court previously dismissed, with leave to amend, each of Plaintiff's claims in her First Amended Complaint ("FAC") for failure to state a claim. (Order, ECF No. 42.) Plaintiff's SAC is almost identical to her FAC and does not cure the deficiencies the Court identified in its Order.

*First*, Plaintiff's CIPA claims both fail because they fall outside the statute of limitations for CIPA, which is one year.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Second*, Plaintiff's CIPA section 631(a) claim fails for the same reason the Court previously dismissed her claim: she still has not adequately alleged that her communications were read or intercepted *in transit*, as required by the statute. (*See* Order at 12.)

*Third*, Plaintiff's newly added CIPA section 632 claim fails because Plaintiff has failed to show that her communications were confidential. While Plaintiff argues her "booking information" is confidential because it qualifies as "guest records" under the Guest Records Statute (SAC ¶¶ 47, 65–66, 69), as the Court previously found, Plaintiff has not alleged the information collected falls within the Guest Records Statute or that the statute applies to Sojern. Moreover, courts presume there is no reasonable expectation of privacy in internet communications.

*Fourth*, Plaintiff's UCL and unjust enrichment claims fail because she has not adequately alleged any unfair or unlawful practices or conduct, or that Sojern has unjustly retained anything of value.

*Fifth*, Plaintiff's invasion of privacy and newly added intrusion upon seclusion claims both fail because she has not adequately alleged a legally protected privacy interest or a reasonable expectation of privacy relating to her basic internet browsing activities.

*Sixth*, Plaintiff's federal wiretap claim fails because Hilton and Marriott consented to the alleged recording and the crime-fraud exception does not apply where Sojern was fulfilling a service provider function known to both Hilton and Marriott.

Plaintiff had the opportunity to cure the deficiencies identified by the Court in its Order and was unable to do so. The SAC should be dismissed with prejudice.

## II. STATEMENT OF ISSUES TO BE DECIDED—L.R. 7-4(A)(3)

Whether this Court should dismiss Plaintiff's SAC against Sojern under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## III. FACTUAL ALLEGATIONS AND BACKGROUND

### A. Sojern Is a Travel Marketing Platform That Serves at the Behest of Its Users.

According to the SAC, Sojern is a travel marketing platform that "allows hotels to identify and advertise to in-market travelers for purposes of online behavioral advertising and to



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

optimize advertising campaigns." (SAC ¶ 29) (emphasis added). "Think of browsing a hotel room and then later seeing advertising for that hotel room or other travel services in that destination, on Facebook." (*Id.* ¶ 59.) Plaintiff alleges that websites like Hilton.com and Marriott.com install Sojern's technology on their websites which "causes tracking software to be installed on the consumer's computer" which "intercepts the consumer's communications with the hotel and discloses those communications to Sojern." (*Id.* ¶ 4.) Plaintiff has been clear in the SAC and previous pleadings that hotel operators like Hilton and Marriott "place[] Sojern's … technology" on their websites and "transfer [users'] information to Sojern." (Pl.'s Response to Order to Show Cause, ECF No. 26 at 1). Plaintiff alleges that the "transmission to the third-party technology provider contains" technical information, "including the GET and POST requests, the webpage's [URL] and metadata," and "user IP address." (SAC ¶¶ 22–23.)

Plaintiff booked Hilton and Marriott hotel rooms on Hilton.com (the "Hilton Website") and Marriott.com (the "Marriott Website"). (*Id.* ¶ 4.) Plaintiff is both a Hilton Honors member and a Marriott Bonvoy member, with Hilton Honors and Marriott Bonvoy points that can be exchanged toward the cost of future Hilton and Marriott hotel room reservations. (*Id.*) Plaintiff has been a Hilton Honors member since March, 22, 1995, and she last accessed Hilton's website on April 4, 2024. (Request for Judicial Notice ("RJN") Decl. of Fjorela Shati ("Shati Decl."), Ex. A ¶ 17; Plaintiff's Hilton Honors Account, Ex. B; SAC ¶ 4.) Plaintiff last booked a stay with Marriott "on or around August 2, 2023." (SAC ¶ 4.) Both Hilton and Marriott disclose to users that they may use third party advertising companies, like Sojern, that may collect information about users by "plac[ing]… a unique cookie on [a user's browser]," or through "server logs, Cookies, web beacons, pixels, mobile advertising IDs" and other technologies to serve advertisements to users. (Hilton Global Privacy Statement, last updated Jan. 24, 2024, RJN Ex. C at 17–19, 28; Marriott Global Privacy Statement, last updated Aug. 1, 2023, RJN Ex. D at 6–9.) When Plaintiff signed up to be a Marriott Bonvoy member, she agreed to and/or was put on notice to the disclosures provided for in the Marriott Global Privacy Statement, (Marriott Bonvoy Account Creation Page, RJN Ex. E at 2), and when she booked her room on Hilton.com, she agreed to and/or was put on notice to the disclosures provided for in the Hilton Global



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Privacy Statement. (Hilton Payment Page for an exemplar property dated Dec. 19, 2024, RJN Ex. F; Hilton Payment Page for an exemplar property dated Jan. 1, 2021, RJN Ex. G.)[1]

## IV. LEGAL STANDARD

Sojern moves to dismiss Plaintiff's SAC with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. It requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## V. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER RULE 12(B)(6).

### A. Plaintiff's CIPA Claims Fail.

#### 1. The Rule of Lenity Precludes Reading CIPA as Applying to the Conduct at Issue Here.

"[T]here is reason to question whether the Legislature intended for CIPA to apply" to third-party data analytics firms who website operators engage to track website activity and use that data for advertising or marketing. Because "CIPA imposes criminal liability and punitive civil penalties[,] … courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation," *Eating Recovery*, 2025 WL 2971090 at *1, which means avoiding criminalizing conduct expressly permitted under the on-point California Consumer Privacy Act ("CCPA"), which was enacted *after* CIPA. Cal. Civ. Code, §§ 1798.100-1798.196. The CCPA "more clearly speak[s] to data sharing," *Eating Recovery*, 2025 WL 2971090 at *6, and the Court should not construe CIPA to prohibit practices that are expressly allowed under the CCPA.

---

[1] The Court previously questioned the applicability of the Hilton Payment Page dated Jan. 1, 2021 because it says "Hilton Honors" at the top of the page. This page is not from a Hilton Honors portal; it is from Hilton.com. Exhibit G shows it was taken from https://www.hilton.com/en/book/reservation/payment. (*Id.*) Additionally, across from the Hilton Honors logo, it says "Sign In" and "Join." (RJN Ex. G.) This page is from the standard Hilton.com page.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

The CCPA "provide[s] … comprehensive internet privacy … protection." C.A. B. An., S.B. 1121 Assem., 8/29/2018 at 1. The guiding principle behind the CCPA is that website operators may collect and share user data but only if they give users the option to "opt out." Under this opt-out scheme, website operators can collect and disclose to third parties "personal information," including a user's "unique personal identifier, online identifier, IP address, [or] email address," so long as they also provide users the ability to request that operators not collect or share their data. *See* Cal. Civ. Code, §§ 1798.140(v)(1)(A) (defining "personal information" and providing parameters for sale and sharing of consumer information), 1798.100 (permitting collection and sharing of personal information), 1798.130 (detailing disclosure requirements). Importantly, the CCPA does not provide a private right of action for non-compliance under section 1798.150(c).

Implementing the CCPA's opt-out scheme took time. Though enacted in 2018, the CCPA did not go into effect until July 1, 2020. *See* 2018 Cal. Legis. Serv. Ch. 55 (A.B. 375). Even then, California voters passed Proposition 24, which delayed the California Privacy Protection Agency (CPPA)— tasked with enforcing the CCPA—from enforcing the CCPA until July 1, 2023. Cal. Civ. Code, § 1798.185(d) (CPPA enforcement "shall not commence until July 1, 2023"); *see* CA Prop. 24, 2020 Cal. Legis. Serv. Prop. 24 (2020). In all, the Legislature and California voters gave businesses five years to adapt to the CCPA's opt-out regime and the rights consumers could exercise thereunder.

As the *Eating Recovery* court explained, the CCPA's provisions "more clearly speak to the practice of data sharing" and, given CIPA's "ambiguity and its imposition of criminal liability, perhaps courts should not be so quick to assume that" "the Legislature really intend[ed] to subject" "third-party company[ies]…perform[ing] data analytics for web traffic" to criminal liability. *Eating Recovery*, 2025 WL 2971090 at *6. This is especially so considering that only the CPPA and Attorney General can enforce the consumer opt-out provisions of the CCPA, which would prohibit Plaintiff from bringing claims relating to this conduct under the CCPA or any other law. *See* Cal. Civ. Code, § 1798.150(c) ("Nothing in this title shall be interpreted to serve as the basis for a private right of action under any other law.")



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Applying CIPA to the conduct at issue here undermines California's settled privacy scheme. The author of SB 690, which "seeks to stop these abusive lawsuits," explained the stakes:

> California businesses are now being sued *because of their compliance* with CCPA's opt-out regime. *These abusive lawsuits do nothing to help consumer privacy.* … [A] plaintiff simply visits a website, looks to see if there are any cookies on the website, and … they send off a demand letter based on CIPA's $5000 per violation (read: per website visitor) and ask for, typically, between $20,000–$50,000 from a business (or non-profit). Smaller businesses typically cannot afford the cost to litigate and settle to make cases go away [so] many have struggled financially.

(C.A. B. An., S.B. 690 Assem., 6/30/25 at p. 6 [emphasis added].) Indeed, under Plaintiff's construction of CIPA, all of the hullaballoo surrounding the CCPA was irrelevant because CIPA secretly contained an opt-in requirement all along, and one that could be enforced by the plaintiffs' bar in a manner reminiscent of the abuses of the Trevor Law Group and others under the UCL prior to Proposition 64's imposition of the "loss of money or property" requirement.[2]

This Court should not endorse Plaintiff's sweeping rewrite and criminalize conduct through CIPA that is expressly permitted by the CCPA. The rule of lenity must be applied under these circumstances; any finding to the contrary is usurping the role of the Legislature.

**2. Both CIPA Claims Fail Because They Fall Outside the Statute of Limitations.**

"Under the CIPA, the applicable statute of limitations is one year." *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020). Plaintiff's claims regarding her use of the Marriott website are outside the limitations period: she alleges that she accessed Marriott's website on August 2, 2023, (SAC ¶ 4), almost two years prior to the filing of the FAC on June 5, 2025, the date that she added claims related to Marriott. Plaintiff is a Marriott Bonvoy member; she claims that by booking Marriott hotel rooms she has accrued Marriott Bonvoy points that she anticipates using in the future. (*Id.*) To become a Marriott Bonvoy member, a user must acknowledge Marriott's Privacy Statement. (RJN Ex. E at 2.) In August 2023, Marriott's

[2] https://archive.calbar.ca.gov/archive/Archive.aspx?articleId=50975&categoryId=50836&month=7&year=2003



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Global Privacy Statement disclosed that Marriott "may use third-party advertising companies" and that "these companies place or recognize a unique cookie on [a user's] browser (including through the use of pixel tags)." (RJN Ex. D at 8.) Plaintiff was necessarily apprised of Marriott's privacy practices prior to her 2023 booking and through the use of her Bonvoy account. Thus, her CIPA claims related to her use of Marriott's website are necessarily time-barred and should be dismissed on this ground.

Plaintiff's claims regarding the Hilton website fare no better. Plaintiff alleges that she has booked multiple hotel rooms with Hilton over time, including on April 4, 2024, and that she is a Hilton Honors member who has accrued "Hilton Honors" points that she anticipates using in the future. (SAC ¶ 4). When Hilton Honors members book hotel rooms, they "acknowledge that Hilton will collect, use, share and transfer [the user's information] as set out in Hilton's Global Privacy Statement." (RJN Exs. F, G.) Since at least 2020, the Hilton Global Privacy Statement has disclosed that it "partner[s] with third parties to provide advertising services that are targeted based on [a user's] online activities across websites, mobile apps, and devices over time," and that "advertising partners may collect information about [a user's] activities on [Hilton's] Services on [a user's] current device and combine with" other information. (RJN Ex. C at 18, 28; Hilton Global Privacy Statement last updated Aug. 12, 2020, RJN Ex. H at 17.) Further, it discloses that third parties, like Sojern, "may collect such information using server logs, cookies, web beacons, tags, pixels, mobile advertising IDs (such as Facebook cookies or Google's Advertising ID), cross-device linking, and similar technologies," and "may use the fact that [a user] visited [Hilton's] website to target advertising to [the user] on other websites and mobile apps[.]" (RJN Ex. C at 18, 28; RJN Ex. H at 17.) When she became a Hilton Honors member, booked rooms, and accrued points, she necessarily was put on notice of Hilton's privacy practices. Plaintiff's failure to plead when she became a Hilton Honors member is a plain attempt at artfully pleading around CIPA's limitations period, as her membership extends back to 1995 and she plainly booked rooms prior to 2024. (*See* RJN Ex. A ¶ 17; Ex. B at 2.)



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**3. Plaintiff's Section 631(a) Claim Fails.**

CIPA § 631(a) is a penal statute. It contains three clauses independently criminalizing: "[1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, [or 3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978). Plaintiff appears to allege Sojern violated § 631(a)'s second and third clauses. (SAC ¶ 110).

*First*, Plaintiff's amendments do not fix the fundamental flaw identified by the Court: she has not alleged the communications were read and "intercepted while in transit." (Order at 12). "It's unclear how to apply the transit requirement to instantaneous internet communications," *Eating Recovery*, 2025 WL 2971090 at *5, but "[c]ourts in the Ninth Circuit have interpreted the transit requirement narrowly." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023). This Court found that Plaintiff's allegations did not "support an inference that her communications were read in transit" citing two paragraphs from the FAC: (1) "a website developer like Hilton and Marriott can use its source code to commandeer the user's computing device, causing the device to contemporaneously in real time and invisibly re-direct the users' personally identifiable guest records and communications to third parties like Sojern;" and (2) that "Sojern…collects as much information relating to a hotel guest as possible all from different sources…stores that information in a centralized location…where it matches data points and creates detailed profiles." (Order at 12.)

In the SAC, Plaintiff's allegations are substantially the same. She continues to allege that Hilton and Marriott engaged Sojern, that the hotels added the Sojern Tracking Pixel to their websites; and that the Sojern Tracking Pixel collects communications from the hotel websites and transmits that information to Sojern's servers, where "the communications…are recorded, stored, and processed for Sojern's business purposes." (SAC ¶¶ 20–27; 29–32.) Her additional allegations simply restate the pleading requirement of real-time interception. (*See* SAC ¶ 20 ("the tracking technologies funnel data about users and their actions with the host website to third parties in real time"); ¶ 24 ("the tracking technology reads the entire contents of the



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

communication with the hotels in real time"); ¶ 25 ("the tracking technology intercepts the communications on the website user's computer, in real time, while the user is communication with the website").) As this Court has previously found, these types of allegations do not show how these alleged interceptions happen in real time and are insufficient to show that a communication was read while in transit. *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023).

In response to the Court's Order, Plaintiff now alleges that the Court misunderstood the word "re-direct" in its Order and clarifies that she did not mean that "the hotel/website re-directed the communication to Sojern after it arrived at the hotel's servers" but instead that "after intercepting the communication … the Sojern Tracking Pixel forwards the communication from the user's computer to Sojern." (SAC ¶ 27 n. 1.) These allegations contradict Plaintiff's FAC; she previously claimed that Hilton and Marriott "use [their] source code to commandeer the user's computing device, causing the device to contemporaneously in real time and invisibly re-direct the users' personally identifiable guest records and communications to third parties like Sojern." (FAC ¶ 25.) Her new allegations remove Hilton and Marriott from the picture, now stating that it is the Sojern Tracking Pixel that captures the information and then forwards it to Sojern. This interpretation is nonsensical. Plaintiff cannot add allegations that contradict those made in a prior complaint, and the Court should disregard such allegations. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading." (cleaned up)).

Moreover, this argument fails even without the contradictions contained in the FAC. To be liable under section 631(a), a party "must do something more than just intercept the communication while it is in transit[.]" *Eating Recovery*, 2025 WL 2971090 at *6. Even if she had alleged that Sojern intercepted her communications in transit, she has not adequately alleged that Sojern ***read or learned*** her communications while in transit. "Reading or learning the contents of communications requires some effort at understanding the substantive meaning of the communication." *Id.* at *5. Plaintiff alleges no facts that allow even a reasonable inference that



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Sojern tries to "understand[] the substantive meaning" of her communications while in transit. *Id.* She alleges that the Sojern tracking Pixel "automatically collects personal information from guests' computers when the guest is visiting hotel's websites and transmits that information to Sojern." (SAC ¶ 32.) Once the information is transmitted to Sojern's servers, "the communications … are recorded, stored, and processed for Sojern's business purposes." (*Id.*; *see id.* ¶ 27 ("To be clear, the tracking technology starts collecting the communications at the point of origin … [a]nd once it arrives at Sojern's servers it is recorded and stored for later use by Sojern.")). Her only allegation that says anything different is conclusory, with Plaintiff alleging that the Sojern Tracking Pixel "reads the entire contents of the communications with the hotels in real time." (SAC ¶ 24.) This Court need not accept this conclusory allegation, and particularly where it is contradicted by her prior allegations that show that Sojern does not "read" the communications until they arrive at its server.

**4. Plaintiff's Section 632 Claim Fails Because Her Communications Were Not Confidential.**

Plaintiff also fails to state a claim under § 632 because she fails to adequately allege that any communications were "confidential."

Section 632 applies only to "confidential" communications and excludes "communication[s] made … in any … circumstance in which the parties to the communication may reasonably expect that the communication may be … recorded." Cal. Penal Code § 632(a). Under this objective standard, a plaintiff must "allege facts that would lead to the plausible inference that [their communication] was … a communication that [they] had an objectively reasonable expectation was not being recorded." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013). Courts "presume[e] that Internet communications do not reasonably give rise to that expectation," *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (collecting cases), because internet communications tend to be transmitted in a recorded form. *See People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (finding online messages not "confidential"). Plaintiff cannot rebut this presumption.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Plaintiff again attempts to circumvent this requirement by arguing her communications with Hilton and Marriott are confidential under California's Guest Records statute because they contain "booking information" that qualify as "guest records" under the statute. (SAC ¶¶ 47, 65–66, 69, 130.) Plaintiff's theory fails for multiple reasons.

*First*, Plaintiff's allegations predicated on the Guest Records statute fail as to Sojern because the allegations fall outside of or are excepted by the statute. Section 53.5(a) prohibits "an innkeeper, hotelkeeper, motelkeeper, lodginghouse keeper, owner or operator of an inn, hotel, motel, lodginghouse" from disclosing guest records to a third party without a court order. By its plain text, the statute might apply to Hilton or Marriott as "an innkeeper," but it cannot apply to Sojern. Sojern is therefore not covered under section 53.5(a) and the statute cannot impose a confidentiality requirement on Sojern.

The Court previously found that Plaintiff failed to address Sojern's argument that Cal. Civil Code § 53.5 does not apply to Sojern. (Order at 13.) In her SAC, Plaintiff attempts to attribute liability to Sojern by alleging it "provided substantial assistance to the hotels in its marketing enterprise for their violations of Cal. Civil Code § 53.5," that Sojern "knowingly programmed the Sojern Tracking Pixel to be used by hotels in its network to collect booking information for advertising purposes," and that "Sojern knew or should have known that such disclosures violate Cal. Civil Code § 53.5." (SAC ¶ 139.) But these allegations cannot change the plain language of the statute that shows that these requirements cannot be imposed on Sojern. Indeed, these additional allegations do not explain why the Guest Records statute, clearly aimed at preventing *hotels* from *disclosing* information to third parties would apply to Sojern—a travel marketing company—which does not disclose any information and is not a hotel.

Moreover, Hilton and Marriott are expressly permitted to use third-party service providers under section 53.5(f), and Plaintiff does not allege that Sojern "use[d] or share[d] data beyond the terms of [its] contract" with Hilton or Marriott in violation of section 53.5(f). The statute also provides that "[t]his section shall not be construed to prevent a private business from providing business records containing a guest's or passenger's name, address, credit card number, or driver's license number … to a third-party service provider that the private business



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

contracts with for business-related services." Cal. Civ. Code § 53.5(i). As Plaintiff acknowledges, hotels like Hilton and Marriott contract with Sojern to help them "identify and advertise to in-market travelers for the purposes of online behavioral advertising and to optimize advertising campaigns across multiple channels and devices." (SAC ¶ 29.) This allegation falls squarely within the exception: a private business—Hilton or Marriott—may provide business records containing guest information to a third-party service provider—Sojern—to help its advertising. Because the statute explicitly provides for this situation, Plaintiff's argument that these communications are confidential because she had "an objectively reasonable expectation of privacy, based on Cal. Civil Code § 53.5," (SAC ¶ 130), necessarily fails and cannot support her claim.

*Second*, as the Court previously found, Plaintiff has not adequately alleged that the information at issue here constitutes guest records. (*See* Order at 13.) Like in her FAC, Plaintiff alleges that Sojern collects "guest records" that "identify an individual guest, boarder, occupant, lodger, customer, or invitee, including with [a] unique identifying number." (SAC ¶ 65.) More specifically, she claims that Sojern collects: "unique identifying numbers associated with Plaintiff Crano…, hotel ID, hotel name/location, hotel room price, number of rooms, check in date, check out date, and the fact that Plaintiff Crano completed her reservations." (SAC ¶ 4.) These allegations are nearly identical to those in her FAC, with the minor addition asserting that the unique identifying numbers are "associated with Plaintiff Crano." (*Id.*)

The Court found that Plaintiff's allegations, including that Sojern collected "unique identifying numbers" were inadequate. (Order at 13.) Her conclusory addition does not make her allegations sufficient. Indeed, Plaintiff fails to allege any facts that show that these identifying numbers are associated with Crano by Sojern, how Sojern could accomplish this association when it is merely serving ads based on the Plaintiff's browsing history rather than any sensitive personal information, or why this number somehow converts nonconfidential internet browsing information to confidential or sensitive personal information.

*Third*, Plaintiff now alleges the booking information is confidential because the hotels "specifically disclaimed sharing booking information for marketing purposes." (SAC ¶ 68.) But



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Plaintiff fails to say how this hotel disclaimer can somehow be imputed to Sojern, that Sojern knew of this disclaimer, or that Sojern can be held responsible for the hotels' disclaimer. Moreover, Plaintiff does not provide any details as to where the hotels allegedly disclaim this, whether the type of information she alleges was collected is necessarily covered by the alleged disclaimer, when Plaintiff saw those statements, or whether she relied upon such statements in making her reservation. Contrary to her allegations, the Hilton Global Privacy Statement explicitly states that Hilton "partner[s] with third parties to provide advertising services that are targeted based on [a user's] online activities across websites, mobile apps, and devices over time," and that "advertising partners may collect information about [a user's] activities on [Hilton's] Services on [a user's] current device and combine with" other information. (RJN Ex. C at 18, 28; RJN Ex. H at17.) Similarly, the Marriott Global Privacy Statement explains that it "may use third-party advertising companies to serve advertisements" and that companies, like Sojern, may "place or recognize a unique cookie on [a user's] browser to serve related advertisements." (RJN Ex. D at 8.)

**B. Plaintiff's UCL Claim Fails.**

A UCL plaintiff "must allege facts showing that she has '… lost money or property as a result of the unfair competition.'" *Graham v. Wells Fargo Bank, N.A.*, 2017 WL 86013, at *3 (N.D. Cal. Jan. 10, 2017). Plaintiff says she "lost money" because Sojern did not pay her for her data (SAC¶ 147), but this hypothetical loss falls short. Again, the CCPA does not require businesses to pay Plaintiff or anyone else for their data. But even if there were such a requirement, Plaintiff "must"—but does not—"allege the existence of a market for [her] data and the impairment of the ability to participate in that market." *Ji v. Naver Corp.*, 2022 WL 4624898, at *9 (N.D. Cal. Sept. 30, 2022); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *6 (W.D. Wash. Dec. 21, 2023) (plaintiffs "failed to allege how they ha[d] … lost profit from the sale of their data without compensation."). "Even assuming the existence of a market for the information taken in this case, the [complaint] is devoid of any allegations describing how the breach devalued plaintiffs' specific information … such that they are prevented from deriving economic benefit from this information in the future." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034,



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

1054 (N.D. Cal. 2022). Just because Hilton, Marriott, or Sojern may value the data for prospective advertising does not mean it had value to Plaintiff, and even if it did, Plaintiff does not allege she could have profited from the data herself or that she intended to profit from the sale of that data. *See Tamraz v. Bakotic Pathology Assocs., LLC*, 2022 WL 16985001, at *5 (S.D. Cal. Nov. 16, 2022) (dismissing privacy-based UCL claim where plaintiff failed to allege he could "profit from his own data"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (same); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024), second cite is at page 849, at *7 (same). This Court has rejected UCL claims where, as here, the plaintiffs "simply list[ed] categories of … damages they claim[ed] to have suffered." *Bayview Hunters Point Residents v. Tetra Tech EC, Inc.*, 2021 WL 1222164, at *4 (N.D. Cal. Mar. 31, 2021). It should do so again.

The UCL claim also fails for other reasons. Plaintiff must allege Sojern engaged in unlawful, unfair, or fraudulent practices to state a UCL claim. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 838 (N.D. Cal. 2020). Plaintiff fails to state an "unlawful" UCL claim, which she bases on CIPA, Cal. Civil Code § 53.5, the ECPA, intrusion upon seclusion and invasion of privacy. (SAC ¶ 138). The UCL claim cannot be based on CIPA for the reasons set forth in section V(A), *supra*, or the ECPA, intrusion upon seclusion, or invasion of privacy for the reasons set forth in sections V(E), *infra*.

Plaintiff again advances the argument that Sojern's conduct was unlawful because it violated the Guest Records statute by "provid[ing] substantial assistance to the hotels in its marketing enterprise for their violations of Cal. Civil Code § 53.5," and that "Sojern knew or should have known that such disclosures violate Cal. Civil Code § 53.5." (SAC ¶ 139). As discussed above, *supra* section V(A)(4), the Guest Records statute does not apply to Sojern because it is not an innkeeper and the type of use alleged by Plaintiff is carved out by the statute.

As the Court previously found, Plaintiff's "conclusory allegations fail to state a claim under the unfair prong." (Order at 15.) Her allegations remain materially unchanged: she continues to allege that Sojern's conduct "constitutes unfair business practices under the UCL because these practices offend established public policy protecting confidential communications,



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

including guest records, and hurt Plaintiff and class members, which cannot be reasonably avoided, and that outweighs any benefit to consumers or competition." (SAC ¶ 142.) This allegation is the same as in the FAC, except that she defined the public policy concern as "protecting confidential communications, including guest records[.]" (*Id.*; *compare with* FAC ¶ 108). These allegations continue to be conclusory, and the Court should again find they fail to state a claim under the unfair prong. *See Warren v. PNC Bank Nat'l Ass'n*, 671 F. Supp. 3d 1035, 1050–51 (N.D. Cal. 2023) (noting "[t]he 'unfair' prong requires proving either: (1) 'the public policy which is a predicate to a consumer unfair competition action' is 'tethered to specific constitutional, statutory or regulatory provisions,' or (2) that the challenged business practice is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,'" and that a complaint must "provide sufficient detail" for the Court to evaluate the unfair prong).[3]

**C. Plaintiff's Unjust Enrichment Claim Fails.**

Although Plaintiff purports to assert a claim for unjust enrichment, "there is not a standalone cause of action for 'unjust enrichment'" in California. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Even if there were, the claim falls with Plaintiff's other claims. Absent any unlawful conduct by Sojern, Plaintiff has not stated a claim that Sojern has unjustly retained any benefit conferred by Plaintiff. *See Doe I*, 2024 WL 3490744, at *10 (dismissing unjust enrichment claim along with privacy claims). And, as explained above, Plaintiff does not allege the putative value in her data or that she paid anything to Sojern.

**D. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail.**

Plaintiff alleges that Sojern has intruded on her "legally protected privacy interests" by violating CIPA, the ECPA, the Cal. Civil Code § 53.5, and "other California common-laws." (SAC ¶ 189). She further alleges that that Sojern "intentionally intruded upon [her] solitude or seclusion" by "plac[ing] itself in the middle of a private place, conversation, or matter to which [it] was not authorized" by "intrud[ing] into [Plaintiff's] computing device[] and web-browser[]," "taking [Plaintiff's] personally identifiable information," "secret[ly] monitoring

[3] Plaintiff does not attempt to allege a fraudulent practice.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

[Plaintiff's] private web browsing," and "surreptitious[ly] recording [her] communications." (SAC ¶ 204, 206–209). Both her invasion of privacy and intrusion upon seclusion claims fail.

Because the tests for invasion of privacy and intrusion upon seclusion are so similar, "courts consider them together[.]" *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). To state a claim for invasion of privacy under the California Constitution, Plaintiff must allege: (1) a legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) an egregious breach of norms. *Hill v. Nat'l Collegiate Athletic Assn.* 7 Cal.4th 1, 35–37 (1994). For an intrusion upon seclusion claim, a plaintiff must allege "(1) intrusion into a private place, conversation, or matter to which Plaintiffs have a reasonable expectation of privacy (2) in a manner highly offensive to a reasonable person." *Hammerling*, 615 F. Supp. 3d at 1088. When considering these claims together, courts "ask (1) whether there is a reasonable expectation of privacy, and (2) whether the intrusion was highly offensive." *Id.*

*First*, Plaintiff has failed to allege a legally protected privacy interest in her information. As a general matter, "[g]iven the inherent nature of the internet, … consumers do not have a reasonable expectation of privacy over their activity" on public websites. *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). "Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much*." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024); *see In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016) ("Most of us understand that what we do on the Internet is not completely private."). As discussed *supra* section V(A)(4), and as the Court previously found, Plaintiff has failed to show she had a legally protected privacy interest in the information she alleges Sojern collected, or that this information is sensitive as guest records under the Guest Records Statute, Cal. Civil Code § 53.5, or that this statute could plausibly apply to Sojern. (Order at 14.) She again does not address the exception in the Guest Records Statute, Cal. Civil Code § 53.5, which exempts "a private business from providing business records containing a guest's or passenger's name, address, credit card number, or driver's license number … to a third-party service provider that



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

the private business contracts with for business-related services." Cal. Civ. Code § 53.5(i). This is exactly what Plaintiff has alleged.

*Second*, her claim fails because she cannot allege that Sojern's alleged intrusion was highly offensive to a reasonable person. In determining whether Sojern's actions were highly offensive, the Court considers "factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020). Courts have found "that data collection and disclosure to third parties that is routine commercial behavior is not a highly offensive intrusion of privacy." *Hammerling*, 615 F. Supp. at 1090 (collecting cases). Indeed, this type of collection is expressly permitted under the CCPA, as discussed in Section V(A)(1), and therefore cannot possibly be "highly offensive to a reasonable person." This claim must be dismissed.

**E. Plaintiff's ECPA Claim Fails for the Same Reasons as Her CIPA Claims.**

Plaintiff's claim under the federal wiretap law again fails because if *any* party to a communication consents to recording, the Wiretap Act does not apply. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014). There is no allegation that Hilton or Marriott did not consent to the sharing of Plaintiff's information. Indeed, Plaintiff alleges that Hilton and Marriott—parties to the alleged communication—consented to Sojern's involvement by installing Sojern's technology on their websites. (SAC¶¶ 4, 44–45.) That consent bars any Wiretap Act claim as a matter of law. *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (dismissing Wiretap Act claim based on third party's interception based on one party's consent).

Further, if Plaintiff again attempts to argue that the "crime-tort" exception applies, this too will fail, as her CIPA claims, invasion of privacy, and intrusion upon seclusion claims fail, and she has failed to explain how Cal. Civil Code § 53.5 could ever apply to Sojern, *see supra* section V(A)(4). There is no crime here, and Plaintiff cannot show otherwise. Plaintiff previously relied on *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023)



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

for the proposition that one-party consent does not apply here. But though *Meta Platforms* discussed the crime-fraud exception, there, the Court reasoned that it could not hold, as a matter of law, that the health providers "*actually* consented to the sending of sensitive healthcare information of its customers" to Meta. *Id.* But here, as discussed, there is no allegation that Hilton or Marriott did not consent to sending Plaintiff's information to Sojern. Plaintiff's claim fails because the hotels consented to sharing her information, and the crime-fraud exception does not apply.

**F. Equitable Remedies Are Unavailable to Plaintiff.**

Plaintiff's UCL and unjust enrichment claims also fail because Plaintiff has an adequate remedy at law through CIPA, which provides both statutory damages and injunctive relief. To pursue equitable relief, a plaintiff must allege she lacks an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). This means she must plead "why monetary damages would be inadequate to make [her] whole." *Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *1 (N.D. Cal. Mar. 28, 2024). Nowhere does Plaintiff allege that she does not have an adequate remedy at law, and, thus, her equitable claims must be dismissed.

## VI. CONCLUSION

For the foregoing reasons, Sojern requests the Court dismiss all of Plaintiff's claims with prejudice because she fails to state a claim.

DATED: January 15, 2026

DAVIS WRIGHT TREMAINE LLP
SPENCER PERSSON
MONICA GIBBONS

By: [signature]
Spencer Persson
Attorneys for Defendant Sojern, Inc.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899