Eric S. Dwoskin (admitted *pro hac vice*)
edwoskin@dwowas.com
**DWOSKIN WASDIN LLP**
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
Phone: (561) 849-8060

Robert G. Loewy (SBN 179868)
rloewy@rloewy.com
**LAW OFFICES OF ROBERT G. LOEWY, P.C.**
20 Enterprise, Suite 310
Aliso Viejo, CA 92656
Tel: (949) 468-7150

*Attorneys for Plaintiff and the putative class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUELLEN CRANO, individually and on behalf of others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>SOJERN, INC.,<br><br>*Defendants*. | Case No. 3:25-CV-2600-JSC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT SOJERN, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date: March 19, 2026<br>Time: 10 a.m.<br>Courtroom: 8<br>Judge: Hon. Jacqueline Scott Corley |

## TABLE OF CONTENTS

**STATEMENT OF ISSUES TO BE DECIDED .............................................. VII**

**INTRODUCTION .............................................................................................. 1**

**BACKGROUND ................................................................................................. 1**

**ARGUMENT ..................................................................................................... 2**

I. PLAINTIFF STATES PLAUSIBLE CIPA CLAIMS. ............................................... 2

*A. Sojern's Rule of Lenity Argument Fails ..................................................... 2*

*B. Plaintiff's CIPA Claims are Timely ............................................................. 4*

*C. Plaintiff's § 631(a) Claim Is Well-Pled. ...................................................... 6*

*D. For § 632, the Communications Are Confidential .................................... 13*

II. PLAINTIFF STATES HER UCL CLAIM ........................................................... 18

III. PLAINTIFF STATES HER UNJUST ENRICHMENT CLAIM ................................... 20

IV. PLAINTIFF STATES HER INVASION OF PRIVACY AND INTRUSION UPON SECLUSION CLAIMS ............................................................................................. 21

V. PLAINTIFF STATES HER ECPA CLAIM ........................................................... 23

VI. THE COURT HAS EQUITY JURISDICTION ........................................................ 24

**CONCLUSION ................................................................................................ 25**

# TABLE OF AUTHORITIES

*A.J. v. LMND Med. Grp.*, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024)----------- 20

*Ambriz v. Google, LLC*, 2025 WL 830450 (N.D. Cal. Feb. 10, 2025)----------------9

*American Life Insurance Co. v. Stewart*, 300 U.S. 203, 214 (1937) ---------------- 24

*Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075 (S.D. Cal. 2023) --5

*Belyea v. GreenSky, Inc.*, 2023 WL 8701311 (N.D. Cal. Dec. 15, 2023) ---------- 25

*Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) - ------------------------------------------------------------------------------------ 4, 20

*Brown v. Google LLC,* 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ------------- 19

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023)------------------------6

*Bruton v. Gerber Prods. Co.*, 703 F. App'x 468 (9th Cir. 2017) -------------------- 20

*Byars v. Goodyear Tire & Rubber Co*., 654 F. Supp. 3d 1020 (C.D. Cal. 2023)----8

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) -------------------- 19

*Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015 (N.D. Cal. 2019) ----------------- 18

*Carijano v. Occidental Petroleum Corp*., 643 F.3d 1216, 1224 (9th Cir. 2011) -- 24

*Coleman v. Kohl's Dep't Stores, Inc*., 2015 WL 5782352 (N.D. Cal. Oct. 5, 2015)- ---------------------------------------------------------------------------------------5

*D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ------ ------------------------------------------------------------------------------------ 8, 11

*Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) --- -------------------------------------------------------------------------------3, 9, 11, 12

*Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024)-----------------------5

*Doe v. Meta Platforms, Inc*., 690 F. Supp. 3d 1064 (N.D. Cal. 2023) ----------21, 24

*Doe v. Microsoft Corp.*, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)--------- 19

*Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814 (E.D. Cal. 2025) ------------ 19

*Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) -------------------------------------- 13

*Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir.1997) -------------------------------- 8
*Ghirardo v. Antonioli*, 14 Cal. 4th 39 (1996) ------------------------------------------ 20
*Gilligan v. Experian Data Corp.*, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ------ 11
*Graham v. Cent. Garden & Pet Co.*, 2023 WL 2744391 (N.D. Cal. Mar. 30, 2023) ------------------------------------------------------------------------------------------- 25
*Greist v. Lendus, LLC*, 2025 WL 621988 (N.D. Cal. Feb. 25, 2025) --------------- 12
*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) ---------- 14, 23
*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988 (2015) --------------- 20
*Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1 (1994) --------------------------- 22
*Hubbard v. Google LLC*, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ------------- 23
*In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) ---------- 20
*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, 2025 WL 2393024 (D. Nev. Aug. 15, 2025) ------------------------------------------------------------------- 19
*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ------ 21
*In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024) ---- 18, 19
*In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016) ------------ 23
*Interstate Cigar Co. v. United States*, 928 F.2d 221 (7th Cir. 1991) ---------------- 24
*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) --------------------------- 5
*John-Charles v. California*, 646 F.3d 1243 (9th Cir. 2011) -------------------------- 12
*Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877 (N.D. Cal. 2022) ----------------------- 4
*Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011) ------------------------------- 18
*Lewis v. Magnite, Inc.*, 2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) ------------ 3, 23
*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) --------------------------------------- 25
*Mata v. Zillow Grp., Inc.*, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ---------- 16
*Mirkarimi v. Nevada Prop. 1 LLC*, 2013 WL 3761530 (S.D. Cal. July 15, 2013) ------------------------------------------------------------------------------------------- 13

*Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)---------------------------------------------------------------------------4
*Muscarello v. United States*, 524 U.S. 125 (1998)-------------------------------------3
*People v. Nakai*, 107 Cal. Rptr. 3d 402 (Cal. 2010) ---------------------------------- 15
*Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) -----------------------------8
*Republic of Philippines v. Marcos*, 818 F.2d 1473 (9th Cir. 1987) ----------------- 24
*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)-------------------------------------------------------------------------------------7, 15, 22
*Ribas v. Clark*, 38 Cal. 3d 355 (1985)---------------------------------------------- 10
*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025)-------------------------------------------------------------------------------------3, 11, 24
*Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060 (N.D. Cal. 2020)------ 20
*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) ------------- 23
*Shular v. United States*, 589 U.S. 154 (2020) -----------------------------------------2
*Shulman v. Grp. W Prods., Inc.*, 955 P.2d 469 (1998), *as modified on denial of reh'g* (July 29, 1998) ------------------------------------------------------------ 13
*Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175 (D. Nev. 2022) ----------- 19
*Smith v. United States*, 508 U.S. 223 (1993) -----------------------------------------3
*Snyder v. G6 Hosp. LLC*, 2025 WL 1254382 (C.D. Cal. Apr. 14, 2025)----------- 18
*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)------------------ 24
*St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ---------------------------------------------------------------------------- 7, 21
*Staples v. United States*, 511 U.S. 600 (1994)------------------------------------------3
*Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552 (D. Ariz. Jan. 28, 2025) 18
*Sullivan v. United States*, 990 A.2d 477 (D.C. 2010) ---------------------------------3
*Torres v. Prudential Financial*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) -----9

*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) ---------- 7

*Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (C.D. Cal. 2023) ---- 8

*Weingand v. Harland Fin. Solutions, Inc.*, 2012 WL 3763640 (N.D. Cal. Aug. 29, 2012) ---------- 21

*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018) ---------- 21

## STATUTES

18 U.S.C. § 2511 ---------- 23

Cal. Civ. Code § 1798.175 ---------- 4

Cal. Civil Code § 53.5 ---------- 13, 17, 18

Cal. Penal Code § 21a ---------- 12

Cal. Penal Code § 631 ---------- 12

Cal. Penal Code § 632 ---------- 13

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiff asks the Court to rule on the following issues:

1. Whether Plaintiff states a California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 claim;
2. Whether Plaintiff states a CIPA, Cal. Penal Code § 632 claim;
3. Whether Plaintiff states a Cal. Bus. & Prof. Code § 17200 (UCL) claim;
4. Whether Plaintiff states an unjust enrichment claim;
5. Whether Plaintiff states invasion of privacy and intrusion upon seclusion claims;
6. Whether Plaintiff states an Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1) claim; and
7. Whether the Court has jurisdiction to hear Plaintiff's claim for equitable remedies under the UCL and for unjust enrichment.

## INTRODUCTION

Defendant Sojern, Inc. ("Sojern") developed technology that intercepts online communications containing consumers' hotel room reservations and travel itineraries. Sojern does not argue that consumers consented to this conduct, or that Sojern does not intercept the contents of the at-issue communications. Instead, Sojern: (a) asks the Court to disregard a statute making its conduct unlawful under the doctrine of judicial lenity; (b) argues that Plaintiff's CIPA claims are untimely because *a subset* of Sojern's interceptions occurred prior to the statute of limitations period; and (c) advances a variety of additional arguments that largely turn on fact issues that should not be decided at Rule 12. The Court should deny Sojern's motion.

## BACKGROUND

Sojern provides online tracking technology (the "Sojern Tracking Pixel") to hotels and other travel providers. ¶¶ 1-2, 36.[1] When users book a hotel room online, they send messages to the hotel's website containing information including the property they wish to stay at, the room(s) they wish to reserve, the date(s) they will check in and depart, the number of individuals in the room, etc. ¶¶ 47-54. The Sojern Tracking Pixel intercepts and analyzes those communications in real time, pairs them with unique identifiers identifying the individual consumer, and sends the relevant portions of the communications to Sojern. ¶¶ 19-60. Sojern's executives publicly boast that it collects and analyzes this information "in real time to run very targeted marketing campaigns for other companies that we work with across the travel and leisure industry." ¶ 37. In that way, consumers who book a hotel room in a particular destination can immediately be targeted with advertisements for other travel services in that in that destination. ¶ 59.

Plaintiff booked Hilton and Marriott hotel rooms using their online booking

[1] Citations to "¶ __" refer to paragraphs in the Second Amended Complaint ("SAC"), ECF 44.

platforms. *Id.* When Plaintiff accessed those websites, the Sojern Tracking Pixel was surreptitiously installed on her computer without her consent. ¶¶ 4, 43-60. Each time Plaintiff reserved a hotel room, the Sojern Tracking Pixel captured her communications with Hilton and Marriott alongside unique identifiers associated with Plaintiff in the manner described above. ¶ 4.

On September 19, 2025, the Court recognized Plaintiff had pleaded in her first amended complaint the disclosure of the contents of her communications with these hotels. ECF 42. The Court also rejected Sojern's consent argument. *Id.* The Court dismissed Plaintiff's claims without prejudice for other reasons. *Id.* As explained below, the SAC cures the deficiencies previously identified by the Court.

## ARGUMENT

### I. Plaintiff States Plausible CIPA Claims.

#### A. Sojern's Rule of Lenity Argument Fails

Sojern contends that the rule of lenity requires a dismissal with prejudice because allowing the CIPA claims would "run[ ] counter" to the California Consumer Privacy Act's ("CCPA") "opt-out regime." Mot. at 2. Sojern is wrong.

The rule of lenity is a rule of statutory construction of last resort, and as such will apply "only when, after consulting traditional canons of statutory construction, [the court is] left with an ambiguous [statute]." *Shular v. United States*, 589 U.S. 154, 165 (2020). Indeed, "a court must first employ all of the traditional tools of statutory interpretation, and a court may resort to the rule of lenity only after seizing everything from which aid can be derived." *Id*. at 166 (Kavanaugh, J., concurring) (cleaned up).[2] Thus, "the rule of lenity comes into operation at the end of the process of construing what [the legislature] has expressed, not at the beginning." *Id.* (cleaned up). To invoke the rule, the court must conclude that there is a "grievous ambiguity

[2] Unless otherwise noted, internal citations and quotations are omitted, and emphasis added.

or uncertainty" in the statute. *Staples v. United States*, 511 U.S. 600, 619 n.17 (1994) (cleaned up). "The mere possibility of articulating a narrower construction [] does not by itself make the rule of lenity applicable." *Smith v. United States*, 508 U.S. 223, 239 (1993); *Joffe v. Google, Inc.*, 746 F.3d 920, 936 (9th Cir. 2013) (same); *see also Muscarello v. United States*, 524 U.S. 125, 138 (1998) (similar); *cf. Sullivan v. United States*, 990 A.2d 477, 483 n.9 (D.C. 2010) (broad language does not warrant application of lenity).

Sojern's analysis fails at step one because it does not identify *any* text of CIPA that it contends is ambiguous as applied to the allegations in this case. Mot. at 5-7. Instead, Sojern appeals to lenity as a matter of policy, arguing that the existence of the CCPA merits the non-application of CIPA in its entirety to internet communications. *Id.* But declining to apply an entire statute as a matter of policy is not the purpose of the rule of lenity. *See Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *13 (C.D. Cal. Dec. 4, 2025) ("Absent ambiguity . . . there is no occasion for such statutory interpretation."); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1094 (N.D. Cal. 2025) (rejecting lenity where defendant did not establish a "grievous ambiguity" in statutory text).

Sojern relies heavily on the district court's summary judgment opinion in *Eating Recovery*. Mot. at 5-7 (citing *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)). There, the court resorted to the rule of lenity to resolve the parties' dispute over two plausible and incompatible applications of "attempting . . . to learn . . . in transit" to the facts of that case. *Eating Recovery*, 2025 WL 2971090 at *6. Sojern, in contrast, is not arguing that "attempting . . . to learn . . . in transit" (or any other specific language) is grievously ambiguous; it is asking the Court to decline to apply the entire statute in the area of internet communications on the grounds that a separate statute also applies in that area.

Putting that fundamental problem with Sojern's lenity argument aside, the existence of the CCPA does not call CIPA's separate and continued viability into question. The same legislature that passed the CCPA: (a) chose to leave CIPA on the books unamended[3]; and (b) included express language in the CCPA making clear that it was intended to *supplement*, and not replace, pre-existing statutes, and that "in the event of a conflict between other laws and the provisions of [the CCPA], the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." Cal. Civ. Code § 1798.175. Thus, courts have rightly concluded that the "CCPA does not preempt CIPA." *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024). *Cf. Kellman v. Spokeo, Inc*., 599 F. Supp. 3d 877, 897 (N.D. Cal. 2022) (rejecting defendant's argument that it could not be liable under California's UCL because the CCPA contained an "express exemption" for its conduct, finding the CCPA does not "expressly or impliedly set aside privacy-based tort claims"); *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *6 (N.D. Cal. Aug. 16, 2021) (similar argument "meritless").

**B. Plaintiff's CIPA Claims are Timely**

Plaintiff pleads that Sojern intercepted her online communications on numerous occasions over the course of several years, including within the one-year statute of limitations period, on April 4, 2024. ¶ 4. Sojern argues that Plaintiff's CIPA claim is nevertheless untimely because: (a) some of the alleged interceptions occurred prior to the statute of limitations period; and (b) Plaintiff was on notice of those older violations when they happened. Mot. 7-8. That argument fails for two reasons.

---

[3] Sojern's reference to S.B. 690 underscores it is making a policy argument; that bill has not passed into law, even though some legislators advocate for it.

First, "[s]eparate violations of the same right can each trigger its own statute of limitations period." *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1082 (S.D. Cal. 2023). In other words, each time Sojern violated CIPA, a new claim was created with a new limitations period. Thus, even if, as Sojern argues, claims based on older interceptions were untimely, Plaintiff would nevertheless have timely claims based on Sojern's conduct during the limitations period.

Second, if Sojern is seeking *partial* dismissal of Plaintiff's CIPA claims to the extent they are based on interceptions occurring *prior to* the limitations period, that issue turns on when plaintiff discovered that older conduct, and whether the statute was tolled, and neither issue can be decided in Sojern's favor on the current Rule 12 record. *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024) (allegation "that 'the earliest' plaintiff could have known of [online tracking] was shortly before filing" was sufficient to show delay accrual at Rule 12); *Coleman v. Kohl's Dep't Stores, Inc.*, 2015 WL 5782352, at *3 (N.D. Cal. Oct. 5, 2015) ("When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.") (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)). The SAC alleges that the Sojern Tracking Pixel was "surreptitiously" installed in the "code" on Plaintiff's computer and thereafter sent "secret" transmissions to Sojern "unbeknownst to Plaintiff." ¶¶ 21-22, 25, 28, 50. "Plaintiff d[id] not have the expertise in identifying and interpreting the underlying coding and the operation of the Sojern Tracking Pixel in order to discover Sojern's wrongful conduct." ¶ 92. "Plaintiff did not discover, and could not reasonably have discovered [Sojern's conduct] until she consulted with counsel—shortly before the Complaint was filed." ¶¶ 93-94.

Sojern's essentially argues that those allegations should be ignored in light of Marriott and Hilton's privacy policies. Mot. at 7-8. But even if the Court considers those documents at the Rule 12 stage, they at most create fact issues, including whether the general disclosures of "cookies," and third parties "collecting information about [a user's] activities," would have put a reasonably prudent consumer on notice that *Sojern* was intercepting their *travel itineraries and room reservation details* in real time in order to enable other travel services companies to target them with ads for services in their intended destination. Indeed, the Hilton "Global Privacy Statement" Sojern relies on expressly states that Hilton does *not* share the information at issue (*i.e.*, room reservation information) with third parties. ECF 62-3 (Exhibit C) at ECF p. 7 (Hilton Global Privacy Statement: stating "We do not share customers' room preferences with third parties" and "We do not share customers' arrival times with third parties"). Marriott's Group Global Privacy Statement, in turn, is silent on the issue and thus does not authorize the disclosure of guest's identities and room reservation information to third parties for advertising purposes; the closest analogue in Marriott's nomenclature appears to be "Stay Preferences," which Marriott does not indicate it ever shares with third parties. ECF 62-4 at ECF p. 7, 17-18 (describing the categories of information it may share, excluding Stay Preferences). And, of course, none of the documents at issue reference the fact that Sojern is intercepting users' travel plans in real time for third-party marketing purposes. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 928 (N.D. Cal. 2023) (finding fact dispute over scope of general and specific terms).

### C. Plaintiff's § 631(a) Claim Is Well-Pled.

Plaintiff alleges that Sojern violated clauses two and three of CIPA § 631(a). ¶¶ 110, 114-15. Clause three liability is derivative of clause two, and thus Sojern's arguments focus on the latter. Mot. at 9-11. Plaintiff's clause two claim is well-pled.

CIPA § 631(a) imposes liability where the defendant "reads, or attempts to read, or to learn the contents . . . of [a] . . . communication while the same is in transit . . . , or is being sent from, or received at any place within this state . . . ." Cal. Penal Code § 631. Thus, to allege clause two liability, the allegations must give rise to a plausible inference that the interceptions occurred "contemporaneously with the sending or receipt of the message" or while the message is "in transit" between its beginning and end point. *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *5–6 (N.D. Cal. Oct. 1, 2024) (citing *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023)). Stated differently, clause two's temporal scope is end-to-end, and thus the interception must occur while the communication between the participants is live rather than before it begins or after it is received and stored. *E.g.*, *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Section 631's protections extend explicitly to the beginnings and ends of communications, so there is no reason to consider the first part of an electronic communication beyond the statute's reach.").

Here, the SAC alleges that Plaintiff sent the communications from her computer located in California. ¶ 4. Via the Sojern Tracking Pixel, Sojern "eavesdrops on and intercepts the[] communications at their point of origin on the guest's web browser, which information is then transmitted to Sojern's servers, contemporaneously as the guest is communicating with Hilton and Marriott." ¶ 54; *see also* ¶ 20 (interception occurs "in real time from the user's browser"); ¶ 28 (similar, "while the user is actively communicating with the website"). Indeed, the SAC quotes from Sojern executives touting its "real time" interception (¶ 37) and contains detailed allegations regarding how and when the communications were intercepted (¶¶ 20-28, 32, 50-54). These allegations are sufficient to show that the interceptions occurred within the temporal scope of CIPA § 631(a) clause two. *E.g.*,

*Byars v. Goodyear Tire & Rubber Co*., 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) ("[T]he [FAC's] allegation that user's messages were intercepted in transit is to be taken as true at this stage of the case."); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) ("The reasonable inference here, because Vergic apparently receives the chat messages either before or simultaneously with JC Penney, is that Vergic intercepts these messages [in transit]"); *Valenzuela v. Nationwide Mut. Ins. Co*., 686 F. Supp. 3d 969, 978–79 (C.D. Cal. 2023) (similar factual allegations rendered the allegation of "in transit" interceptions plausible).

Sojern's primary rebuttal to these allegations is to ask the Court to ignore them in favor of purportedly contrary allegations in a prior pleading. Mot. at 10. In particular, Sojern argues that Plaintiff's prior complaint alleged that the communications were "re-directed" to Sojern, which Sojern interprets to mean that the communications first went to the hotels before they were later passed on to Sojern. *Id.* As explained in the SAC, that reading of Plaintiff's prior pleading is not consistent with Plaintiff's use of the term "re-direct," and the two pleadings are not inconsistent. ¶ 27 at n.1 (explaining the usage in the prior pleading). In any event, the operative allegations are those in the *SAC*, not those in a prior pleading. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir.1997) (well-established that an amended complaint "supersedes the original, the latter being treated thereafter as non-existent.") (cleaned up).[4]

The SAC also alleges that Sojern "reads, or attempts to read, or to learn" the contents of the communications while they are within the temporal scope of clause two. As an initial matter, the Sojern Tracking Pixel *is* Sojern, and it "learns" the

[4] The leave to amend discussion in Sojern's case—*Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)—is inapposite at this stage of the proceedings. The Court has *already* granted Plaintiff's motion for leave to amend to file the SAC with the allegations included therein. Those allegations are now operative.

contents of the messages upon interception. *See Ambriz v. Google, LLC*, 2025 WL 830450, at *4 (N.D. Cal. Feb. 10, 2025) ("When [Google's device] 'learns' the content of the call, that is the same as Google 'learning' it."). Thus, where, as here, the interception occurred within clause two's temporal scope, so too did the "learning." Accordingly, as Sojern's authority recognizes, some courts have held that "merely intercepting the communication while it's being made is enough, as long as the interception happens simultaneously or near-simultaneously." *Eating Recovery*, 2025 WL 2971090, at *5 (collecting cases).

Other courts, however, have held that the defendant must do *more* than mere interception to "actually read or attempt to read the communications" while they are within clause two's temporal scope. *Eating Recovery*, 2025 WL 2971090, at *5 (citing *Torres v. Prudential Financial*, 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025)). *Eating Recovery* and *Torres* were both summary judgment cases with unique Rule 56 records. In the former, the defendant was indisputably attempting "to avoid" reading or learning the messages; in the latter, the information intercepted was "a series of undeciphered 'events'" that were impossible to read or learn. *Eating Recovery*, 2025 WL 2971090, at *5; *Torres*, 2025 WL 1135088, at *5. It is understandable why a court might demand *more* than interception to show "reading" or "learning" when discovery shows either: (a) that the interception was made *to avoid* reading or learning; or (b) that, at the time of interception, reading or learning was impossible.

But to the extent that this second line of cases hold that something more than interception is *always* required to show that the communication was "read" or "learned," they become hard to square with the decision in *Ribas v. Clark*. There, writing in 1985, the California Supreme Court noted that CIPA 631(a) was a broad privacy statute designed to prevent a communication's "simultaneous dissemination

to an unannounced second auditor, *whether that auditor be a person or mechanical device*," without any discussion of whether the "mechanical device" went on to do something more with the communication between its end points. *Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985). If dissemination to a 1985-era "mechanical device" is within the scope of the statute, then interception by modern online tracking technology should also be sufficient, regardless of whether the technology goes on to do something *more* with the communication while it is occurring between the participants. *Cf. id.* at 360-61 ("[S]ecret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.").

All of that said, the Court need not decide this issue here because Plaintiff *does* allege that the Sojern Tracking Pixel intercepted *and* read and analyzed the communications during the temporal scope of clause two. In particular, the SAC alleges that "the tracking technology reads the entire contents of the communication with the hotels in real time and is configured to collect specific aspects of the communication that [are] relevant to Sojern's business," and "[t]he relevant parts of the communication are then transmitted from the user's browser to Sojern's servers," "contemporaneously as the [consumer] is communicating with [the hotel]." ¶¶ 24-25, 53-54. The technology could not perform that analysis if it did not read *and* learn the contents of the communication. And since the relevant parts of the communication are disclosed to, and used by, Sojern in real time (*e.g.*, ¶¶ 27, 36), there is at least a plausible inference that the analysis performed by the Sojern Tracking Pixel occurs during the temporal scope of clause two. That is enough under any interpretation of the statute. *E.g.*, *R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994, at *4 (N.D. Cal. June 23, 2025) ("Google interprets and selects specified portions of the user's interactions and communications to be used for advertising

and analytics, all while the transmissions are in transit to the Psychology Today website servers.") (cleaned up); *Cf. Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026) (reading in transit alleged where the communications were intercepted and used by the tracking technology in "real time").

Sojern cites *Eating Recovery* in passing on this issue (Mot. at 10), but that case is factually and procedurally distinguishable. There, the summary judgment record showed that: (a) the technology analyzed the data at issue "*to avoid* storing material that [the technology provider] should not be storing"; and (b) that process "indisputably t[ook] place *after* the communication had already traveled from the website visitor to the website operator." *Eating Recovery*, 2025 WL 2971090, at *5. The SAC alleges that neither of those things is true here. Unlike the technology provider in *Eating Recovery*, Sojern intercepts and analyzes the communications for the purpose of *using* the at-issue contents (¶¶ 20, 24, 25, 38-39, 53), and that process is alleged to occur "at their point of origin on the [consumer's] web browser . . . contemporaneously as the [consumer] is communicating with Hilton and Marriott" (¶¶ 24, 54). At a minimum, the Court should, like Judge Chhabria in *Eating Recovery* and Judge Breyer in *Torres*, analyze these fact-intensive timing issues at Rule 56, not Rule 12. *See D'Angelo*, 2023 WL 7006793, at *8 (a "pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder."); *Riganian*, 791 F. Supp. 3d at 1092 ("As *Torres* itself illustrates, however, whether communications are 'read' in transit or only after storage is a fact-intensive question that depends on how the challenged technology and processes actually work—a question *Torres* decided only after a full evidentiary record at summary judgment.").

Putting all of the above aside, the SAC further alleges that Sojern's conduct amounted to, at a minimum, an "attempt" to learn the contents of the communications during clause two's temporal scope (¶¶ 54, 60, 114), which is an independent basis for liability. Cal. Penal Code § 631(a). "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." Cal. Penal Code § 21a. Even assuming, for the sake of the argument, that neither the interception itself, nor the simultaneous relevant-subset analysis, amounted to "reading" or "learning," Sojern would still have "attempt" liability under § 631(a) clause two because: (1) the interception (and, for that matter, the relevant-subset analysis) was an act done toward reading or learning; and (2) Sojern's executives have stated that they were at least *trying* to learn and use the contents in "real time" (¶¶ 37-39).

Sojern's brief does not address this issue, and thus waived any argument to the contrary. *Greist v. Lendus, LLC*, 2025 WL 621988, at *1 n.1 (N.D. Cal. Feb. 25, 2025) ("failing to raise . . . challenge in its opening brief . . . waived any argument on that point"). True, Sojern cites generally to *Eating Recovery*, and that case finds no "attempt" liability on its facts at summary judgment. But citing *Eating Recovery* without mentioning or attempting to apply that particular holding is hardly the same thing as developing an argument. *John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (holding party "failed to develop any argument on this front, and thus has waived it"). In any event, the *Eating Recovery* court was addressing a summary judgment record that showed that the technology provider was filtering information *after* the communication ended with the intent *not* to read or store it, and even there found that the plaintiff's "attempt" theory was "plausible" and reached its holding "without a great deal of confidence." *Eating Recovery*, 2025 WL 2971090, at *4-6.

**D. For § 632, the Communications Are Confidential**

Plaintiff also alleges a claim under CIPA § 632. ¶¶ 3, 27, 32, 70, 119-134. This claim is not alleged in the alternative to the claim under CIPA § 631, as Plaintiff alleges Sojern independently violated both sections. As described above, Sojern violated CIPA § 631(a) by intercepting and analyzing the communications during the temporal scope of clause two. It then went on to separately violate CIPA § 632 by recording the intercepted information. *Id.*

Sojern argues that the intercepted communications were not "confidential" because Sojern's interception did not violate Cal. Civil Code § 53.5 (the "Guest Records Statute"). Mot. at 11-14. But even assuming, for the sake of the argument, that Sojern were correct about the Guest Records Statute (and, as discussed below, it is not), "confidentiality" under § 632 does not require a violation of that (or any other) statute. *See Shulman v. Grp. W Prods., Inc.*, 955 P.2d 469, 492 (1998), *as modified on denial of reh'g* (July 29, 1998) ("Ruth's claim, of course, does not require her to prove a statutory violation, only to prove that she had an objectively reasonable expectation of privacy in her conversations."). Confidentiality under § 632 "requires 'nothing more than the existence of a reasonable expectation by one of the parties that no one is listening in or overhearing the conversation.'" *Mirkarimi v. Nevada Prop. 1 LLC*, 2013 WL 3761530, at *2 (S.D. Cal. July 15, 2013) (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 772-73 (2002)). And Plaintiff alleges numerous reasons why consumers had a reasonable expectation of privacy in the intercepted information, whether or not the interceptions also violated the Guest Records Statute.

- Hotel booking details are inherently sensitive, as they disclose where individuals will be (and not be) and who they are traveling with. ¶ 61.[5]
- The hotels in question told consumers that they did *not* share room reservation details with third parties, like Sojern. ¶ 68.
- The California legislature has expressly recognized that hotel booking information is sensitive and that consumers expect it to remain confidential. ¶ 62.
- Caselaw recognizes the contents of communications, such as those that reveal "personal interests, queries, and habits" are expected to be private, including, for example, Sojern's case, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022).

Rather than addressing these points, Sojern broadly argues that all internet-based communications are non-confidential. Mot. at 11. But "[n]othing in Section 632 ties confidentiality to the mode in which a conversation is recorded." *Brown*, 685 F. Supp. 3d at 937. And, as courts have held, the argument that internet communications are presumptively non-confidential "fails on examination." *Id.* (distinguishing *Rodriguez v. Google LLC,* 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021)). That is because "[t]he scattering of state and federal cases (none from the California Supreme Court) considering various communications on a case-by-case basis do not establish that California law presumes the non-confidentiality of all online communication." *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024). Thus, "[t]hat [] communications occurred over the internet does not

---

[5] *E.g.*, Pew Research Ctr., Public Perceptions of Privacy and Security in the Post–Snowden Era 32 (2014), https://www.pewresearch.org/internet/2014/11/12/public-privacy-perceptions/ (82% of American adults consider details of their physical location over time to be sensitive information); FED. TRADE COMM'N, *Protecting Consumer Privacy In An Era Of Rapid Change: Recommendations For Businesses And Policymakers* 33 (2012) (data showing "predictive pattern of consumer's movement" is sensitive).

automatically mean that plaintiffs gave up th[e] expectation of privacy[.] … Times change, as do modes of communication." *Brown*, 685 F. Supp. 3d at 939.

Even if internet communications are *presumptively* non-confidential, any presumption is rebutted here because of the sensitive nature of the information. While some or perhaps even many internet communications may be non-sensitive, consumers can and do communicate information online that they would not post publicly, alongside their real-world identity, in a public forum. Travel itineraries fall into that bucket, including because they reveal, among other things, when a consumer will and will not be home, where the consumer will be and when, and whether the consumer is traveling with others. ¶¶ 61-62; *cf. In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (sensitive communications distinguishable from general online communications). And when consumers communicate that information to a hotel at which they will be staying (or *e.g.*, the airline they are traveling on, etc.), they reasonably expect that the receiving business will not pass it along to third parties. At a minimum, whether Plaintiff's expectation in that regard was reasonable is a question that cannot be answered as a matter of law at Rule 12.[6]

One source of Plaintiff's expectation of privacy is that the hotels she booked rooms with disclaimed that they would share the information with third parties. ¶ 68. Sojern argues that it is not "responsible" for those disclaimers. Mot. at 13-14. But Sojern need not be responsible for the disclaimers for them to impact *Plaintiff's* expectation of privacy. Sojern further criticizes this allegation on the grounds that it is contrary to the hotel's privacy policies, which Sojern is attempting to inject into the Rule 12 record. But even if the Court considers those documents, they *support*

[6] *People v. Nakai*, 107 Cal. Rptr. 3d 402, 418 (Cal. 2010) is distinguishable because there the defendant's privacy policy authorized the conduct at issue, and *Revitch*, 2019 WL 5485330, at *3 involved nonsensitive generic retail data, and even then still sustained the § 631(a) claim.

Plaintiff's allegation because they disclaim, either expressly or by implication, that Hilton and Marriott share booking information with third parties. ECF 62-3 (Exhibit C) at ECF p. 7 (Hilton Global Privacy Statement: stating "We do not share customers' room preferences with third parties" and "We do not share customers' arrival times with third parties"); ECF 62-8 (Exhibit H) at ECF p. 6 (same); ECF 62-4 (Marriott's Group Global Privacy Statement) at ECF p. 7, 17-18 (describing the categories of information it may share, excluding Stay Preferences). Hence, the documents, as a whole, do not authorize the disclosure of the information at issue. At minimum, there are multiple plausible interpretations of the documents that should not be resolved at Rule 12.

Plaintiff alternatively alleges that the information is confidential because it is specifically protected by the Guest Records Statute. Sojern's brief focuses almost entirely on this alternative argument. Mot. at 12-13. But each of Sojern's arguments should be rejected.

First, Sojern argues that because it is not a hotel, it cannot violate the Guest Records Statute. Mot. at 11-12. As an initial matter, as explained above, the Guest Records Statute can be a basis to establish a reasonable expectation of privacy in the information at issue, even if it was the hotels, rather than Sojern, that violated it. Putting that aside, Plaintiff alleges that Sojern aided and abetted the hotels' violations of the statute by providing substantial assistance. ¶ 139. *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *7 (S.D. Cal. Dec. 18, 2024). Sojern contends that Sojern does not disclose booking information to others, but that argument is beside the point because Sojern enables the disclosures made by the hotels to Sojern. ¶ 139.

Second, Sojern argues that its disclosures did not violate the Guest Records Statute because it falls into the narrow exception for the disclosure of "business records" to "third-party service providers." Mot. at 12-13 (citing Cal. Civ. Code §

53.5(i)). Sojern is not a "third-party service provider" under the Guest Records Statute. *See* Cal. Civ. Code §§ 53.5 (f) and (i). The term "third-party service provider" is limited to only those service providers that have "no independent right to use or share the data" beyond the services provided to the hotel (Cal. Civ. Code § 53.5(f))—meaning, the data can only be used for the hotel's benefit. Sojern, in contrast, used the data for its own purposes, including to provide targeted advertising services to its *other* paying clients. *See* ¶¶ 35-42. Although the minutiae Sojern's operation are uniquely in its control, the essence of the business model is that once Sojern learns that a particular consumer will be in a particular location at a particular time (because of *e.g.*, the interception of a hotel booking confirmation), it can then sell its services to other businesses in that location, such that if a consumer books a hotel in Phoenix, they can be targeted with advertisements by *e.g.*, sightseeing companies in Phoenix. *Id.*; *see also* ¶ 59. Thus, Sojern is not and cannot be a "third-party service provider" under Cal. Civ. Code § 53.5(f), and the exception in Cal. Civ. Code § 53.5(i) does not apply.

Third, Sojern highlights that the Court previously held that the information at issue had not been shown to be a "guest record" under the statute. ECF 42 at 13-14. The statute defines "guest record" as "any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee," including via a "unique identifying number," and prohibits the disclosure of "all or any part of" such a record. Cal. Civ. Code §§ 53.5(a) and (c). The SAC alleges that Sojern intercepted "unique identifying numbers associated with Plaintiff Crano alongside information that identified the relevant hotel ID, hotel name/location, hotel room price, number of rooms, check in date, check out date, and the fact that Plaintiff Crano completed her reservations." ¶ 4. The SAC further explains the types of identifiers used, ¶¶ 33, 52-59, 65, and that they are key to Sojern's business model of real time ad delivery to influence decision

making, ¶¶ 36-41. And even beyond Plaintiff's express allegations, there is also a plausible inference, that must be drawn in Plaintiff's favor, that the information disclosed identifies the individual hotel customer because if the information did *not* in some way identify the individual guest, then Sojern would not be able to target *that individual* with advertisements for other travel services in the destination the individual was traveling. *E.g.*, ¶¶ 35-42, 59.

The Court's prior ruling on the "guest record" issue cited *Snyder v. G6 Hosp. LLC*, 2025 WL 1254382, at *4 (C.D. Cal. Apr. 14, 2025). There, the problem was that the plaintiff had "not explain[ed] how" the "dates of the trip, number of guests, username, etc., constituted guest records under California Civil Code § 53.5." The allegations added to the SAC, as described in the immediately preceding paragraph, cure that issue here.

## II. Plaintiff States Her UCL Claim

There are "innumerable ways" to allege "lost money or property" for UCL standing, including where a plaintiff "surrenders in a transaction more … than he or she otherwise would have," or has "a present or future property interest diminished." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 321-327 (2011) (overviewing UCL standing); *see also Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1019 (N.D. Cal. 2019) (same). As is particularly relevant here, "privacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL." *In re Meta Pixel Tax Filing Cases* ("*In re Meta Pixel Tax*"), 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024); *see also Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552, at *8 (D. Ariz. Jan. 28, 2025) (UCL standing based on disclosure of private information via website tracking technology). And courts addressing similar claims have found UCL standing where the plaintiff alleged: (a) that "a user shares information with the expectation that it will be protected but the recipient

does not actually protect it," *In re Meta Pixel Tax*, 724 F. Supp. 3d at 1024; or (b) that "plaintiffs [] suffered a loss of their personal information," *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (citing cases), including where the plaintiffs provided "detailed allegations" on how "the 'cash value' of the data which [defendant] collected 'c[ould] be quantified,'" *Brown v. Google LLC*, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021).

Plaintiff has UCL standing for two separate and independent reasons. First, with respect to the request for a going-forward injunction under the UCL, Plaintiff alleges that she is still a Marriott and Hilton loyalty club member, has accrued loyalty points that have an economic value, and anticipates using those points in the future but cannot do so without Sojern intercepting her communications. ¶ 4. That is an economic injury and a basis for a going-forward injunction.

Second, with respect to the request for restitution for past harms under the UCL, Plaintiff alleges that the data at issue has value and that Sojern took it from Plaintiff without compensating her. ¶¶ 71-90. The SAC contains detailed allegations regarding how the cash value of Plaintiff's data can be quantified. *Id*. Taking data without compensation is an economic injury. *See In re Meta Pixel Tax*, 724 F. Supp. 3d at 1013 ("provid[ing] something of value to [the defendant] and receiv[ing] nothing in return . . . can constitute an economic injury."); *Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 847 (E.D. Cal. 2025) (similar). Sojern's authority is out of step with "the growing trend across courts" recognizing UCL standing under these circumstances. *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *13 (W.D. Wash. Dec. 19, 2023) (citing cases); *See also In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, 2025 WL 2393024, at *5 (D. Nev. Aug. 15, 2025) (plaintiff need not allege "an impairment of their ability to participate in that market"); *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1190 (D. Nev. 2022) (same).

Sojern's other arguments for dismissal are also unavailing for reasons explained above. Nor is Plaintiff's "unfair" claim conclusory. Rather, as Sojern recognizes, the amended allegations were sufficient to put Sojern on notice of the specific policies Sojern violated. Mot. at 16. *See also* ECF 44-1 (SAC redline showing changes to Paragraphs 138-144 describing the specific policies that are allegedly unfair). *See In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014).

### III. Plaintiff States Her Unjust Enrichment Claim

Sojern argues that unjust enrichment is not an independent cause of action under California law. That view is "outdated." *Brooks*, 2021 WL 3621837, at *11. *See also Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1080 (N.D. Cal. 2020) (recognizing unjust enrichment as a standalone claim). Following a decision by the Supreme Court of California allowing an independent claim for unjust enrichment, the Ninth Circuit has recognized unjust enrichment as a standalone cause of action. *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (reversing dismissal of standalone unjust enrichment claim) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015) (allowing an independent claim for unjust enrichment) and *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 54, 57 (1996) (same)).

Plaintiff alleges Sojern benefited from violating Plaintiff's privacy and from taking her data without compensating her. ¶¶ 86-90. And Plaintiff further alleges that if the Court dismisses, or enters summary judgment on, her damages claims, then she will be left without an adequate legal remedy. ¶ 152. That is sufficient to state an alternative claim for unjust enrichment. *See A.J. v. LMND Med. Grp.*, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegation that defendant benefitted from their information by exchanging it without their consent

and that plaintiffs failed to receive the benefit of their bargain was sufficient to preclude dismissal); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023) (permitting plaintiffs to plead an unjust enrichment where plaintiffs allege that their remedies at law are inadequate). *See also Weingand v. Harland Fin. Solutions, Inc*., 2012 WL 3763640, at *4 (N.D. Cal. Aug. 29, 2012) ("[E]ven though a plaintiff may not ultimately prevail under both unjust enrichment and breach of contract, it may plead both in the alternative.").

## IV. Plaintiff States Her Invasion of Privacy and Intrusion Upon Seclusion Claims

Sojern contends that Plaintiff did not have a reasonable expectation of privacy in her booking information and that the disclosure of such information was not highly offensive for purposes of Plaintiff's privacy tort claims.

As an initial matter, because these inquiries are fact intensive, "[c]ourts are generally hesitant to decide claims of this nature at the pleading stage." *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d at 799; *see also Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (holding that determinations of whether conduct is highly offensive "is indeed a factual question best left for a jury."); *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 606 (9th Cir. 2020) ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage"). Thus, the Court should decline to resolve this issue at the Rule 12 stage. *Cf. Sussex Publishers*, 2025 WL 948060, at *9 ("[T]he Court cannot conclude as a matter of law such conduct was not highly offensive.") (cleaned up) (quoting *St. Aubin*, 2024 WL 4369675, at *13).

To the extent the Court is inclined to resolve this issue here, it turns on "the degree of the intrusion, the context, conduct and circumstances surrounding the

intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994). Here, the degree of the intrusion is coterminous with the sensitive nature of the information, and Plaintiff's reasonable expectations of privacy therein, which are discussed above in connection with CIPA 632. The context, conduct and circumstances surrounding the intrusion are that Sojern secretly places eavesdropping technology on tens or hundreds of thousands of consumer's computers without consent, for the purposes of spying on their travel plans. Sojern's motive and objective is to make money by monetizing consumer's travel plans via targeted advertising services for its paying clients. The setting into which Sojern intrudes is consumer's computing devices. And, for all of the reasons discussed above, consumers have a reasonable expectation of privacy in the information Sojern secretly takes from them. That is enough to show highly offensive conduct for purposes of these privacy torts. *Sussex Publishers*, 2025 WL 948060, at *9 (where, as here, "Defendant implemented a system that surreptitiously allowed third parties to track, record, and intercept [plaintiffs'] and other online [] confidential communications [and] personally identifiable information . . . and use that information for marketing and other purposes ... that is sufficient to allege that Defendant's conduct was highly offensive."). Sojern's *Revitch* case also supports this conclusion. *Revitch*, 2019 WL 5485330, at *3 ("A jury could conclude that this intrusion, which allegedly allowed NaviStone to associate Revitch's browsing habits with his identity, is a highly offensive breach of norms.").

Sojern's caselaw is otherwise distinguishable.[7] Courts have distinguished *Hubbard* and *Hammerling* where the defendant allegedly "monitored and

---

[7] Sojern incorrectly attributes the quote "[g]iven the inherent nature of the internet, … consumers do not have a reasonable expectation of privacy over their activity" on public websites to *Hubbard*

intercepted communications related to their personal characteristics, modes of living, purchase decisions, app selections, spending habits, and click choices." *Magnite*, 2025 WL 3687546, at *8 (distinguishing *Hubbard*, 2024 WL 3302066, at *7 and *Hammerling*, 615 F. Supp. 3d 1069). *See also In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d at 801 n.13 (distinguishing *Hammerling* on the grounds it did not involve communication contents). *Hubbard* itself recognized it did not involve surreptitious collection as here. *Id*. Indeed, as Sojern's caselaw also recognizes, the absence of either legal or personal consent, both of which are lacking here, shows the conduct was offensive. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 295 (3d Cir. 2016) (offensive conduct can be based on absence of either "legal or personal permission," including "collecting information using duplicitous tactics").

## V. Plaintiff States Her ECPA Claim

Sojern argues that it cannot be liable under the ECPA because Hilton and Marriott consented to Sojern's involvement. Mot. at 18. First, consent is a factual determination, and, based on the language of the hotel's privacy policies, which Sojern relies on in its brief, it may be that the hotel's did not understand the scope of data and communication Sojern was collecting. *See Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025); ECF 42 at 11 (consent "cannot be resolved as a matter of law"). Second, one party consent does not overcome ECPA liability where the interception is a crime or tort—the so-called "crime-tort exception" to the ECPA's one-party consent rule. 18 U.S.C. § 2511(2)(d). Sojern's actions are allegedly tortious or criminal for multiple independent reasons, including that they violate: (a) the common law privacy torts alleged in the SAC; (b) the

*v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). Mot. at 17 (purportedly quoting case).

California Penal Code (*i.e.*, CIPA); and (c) the Guest Records Statute. For each of those reasons, the one-party consent exemption doesn't apply. *See Meta Platforms*, 690 F. Supp. 3d at 1078 ("one-party consent exemption" doesn't apply when party acts tortiously); *Riganian*, 791 F. Supp. 3d at 1090 (unlawful interception and use of personal information at scale satisfies exception).

## VI. The Court has equity jurisdiction

Sojern seeks dismissal of Plaintiff's request for UCL and unjust enrichment equitable relief under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) for lack of equity jurisdiction. Mot. at 19. That argument should be rejected.

*Sonner* held that "federal courts must apply equitable principles derived from federal common law to claims for equitable restitution" under a federal court's equity jurisdiction. *Id.* at 837. Under analogous circumstances, at the pleading stage, jurisdictional claims are reviewed under an "exceedingly generous standard," *Republic of Philippines v. Marcos*, 818 F.2d 1473, 1478 (9th Cir. 1987), and declining jurisdiction is a "drastic exercise" that should only "be employed sparingly," *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011). Moreover, it has long been a principle of equity jurisprudence that the mere existence of a possible remedy at law is not sufficient to warrant denial of equitable relief. *See American Life Insurance Co. v. Stewart*, 300 U.S. 203, 214 (1937). Indeed, "[w]here equity can give relief plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law." *Id. See also Interstate Cigar Co. v. United States*, 928 F.2d 221, 223 (7th Cir. 1991) (same). As such, declining jurisdiction is premature now, where, as here, plaintiff alleges legal remedies may be inadequate, ¶ 152, and the defendant has advocated to dismiss the legal claims with prejudice, *e.g.*, *Belyea v. GreenSky, Inc.*, 2023 WL 8701311, at *7 (N.D. Cal. Dec. 15, 2023) ("premature to determine *as a matter of law* the plaintiff ha[s] an

adequate remedy at law" where the complaint alleges that "UCL monetary restitution is in the alternative to the legal claims and that no adequate remedy exists at law.") (emphasis in original). Indeed, considering this question later will not affect the scope of discovery because tolling should allow the discovery to start when Sojern first deployed the Sojern Tracking Pixel. Finally, *Sonner* does not bar forward-looking injunctive relief. *See, e.g.*, *Graham v. Cent. Garden & Pet Co.*, 2023 WL 2744391, at *4 (N.D. Cal. Mar. 30, 2023).

## **CONCLUSION**

For all the foregoing reasons, the Court should deny Sojern's motion to dismiss or allow leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Dated this 12th day of February 2026.

DWOSKIN WASDIN LLP

*/s/ Eric S. Dwoskin*

Eric S. Dwoskin (admitted *pro hac vice*)

*Attorneys for Plaintiff and the Putative Class*

**E-FILING ATTESTATION**

I, Eric S. Dwoskin, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Eric S. Dwoskin*
Eric S. Dwoskin