Eric S. Dwoskin (admitted *pro hac vice*)
edwoskin@dwowas.com
**DWOSKIN WASDIN LLP**
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
Phone: (561) 849-8060

Robert G. Loewy (SBN 179868)
rloewy@rloewy.com
**LAW OFFICES OF ROBERT G. LOEWY, P.C.**
20 Enterprise, Suite 310
Aliso Viejo, CA 92656
Tel: (949) 468-7150

*Attorneys for Plaintiff and the putative class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

SUELLEN CRANO, individually and on behalf of others similarly situated,

*Plaintiff*,

vs.

SOJERN, INC.,

*Defendants*.

Case No. 3:25-CV-2600-JSC

**PLAINTIFF'S OPPOSITION TO DEFENDANT SOJERN, INC.'S SUPPLEMENTAL BRIEF ON ARTICLE III STANDING IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Judge: Hon. Jacqueline Scott Corley

## LEGAL STANDARD

To establish Article III standing, a plaintiff must allege that she suffered a concrete injury in fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016). "Concrete" injuries are "real" injuries that are "not abstract," and include both (a) tangible harms (*e.g.*, economic injuries) and (b) intangible harms (*e.g.*, privacy injuries). *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-25 (2021). When performing the Article III analysis, courts (a) take all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013); and (b) "accept as valid the merits of [the plaintiff's] legal claims," *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022); *Idaho Conser. v. Bonneville*, 83 F.4th 1182, 1189 (9th Cir. 2023) (same).

## ARGUMENT

Plaintiff alleges two concrete injuries in fact: (1) the tangible economic injury when Sojern took her data without compensation; and (2) the intangible privacy injury when Sojern intercepted her personally identifiable hotel bookings without consent and used them to build a profile of her travel preferences for use by Sojern's advertising clients.

### I. Plaintiff Pleads An Economic Interest In Unjustly Obtained Profits.

Sojern took Plaintiff's data without consent or compensation. SAC ¶¶ 4, 85, 90. The data Sojern took has a market and value. *Id.* ¶¶ 73-85. Sojern used the data for its own pecuniary gain. *Id.* ¶¶ 71-72. Sojern argues that Plaintiff did not "los[e] money" because she did not intend to sell the data. ECF 72 at 2. That argument misses the point. By taking something of value from Plaintiff without compensation, and using it for its own pecuniary gain, Sojern was unjustly enriched at Plaintiff's expense. *Id.* ¶¶ 86-90. Plaintiff's entitlement to seek redress for that conduct is a basis for Article III standing. *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at

*3 (N.D. Cal. Jan. 12, 2026) ("Tsering and Davis allege not only that their … data has monetary value, but also that Meta was able to monetize their data by collecting it, creating comprehensive user profiles, incorporating it into its advertising products, and selling it for advertising purposes," and thus "Plaintiffs have adequately pleaded an entitlement to [Meta's] profits from users … data sufficient to confer Article III standing."); *In re Meta Android Privacy Litig.*, 2026 WL 1279416, at *4 (N.D. Cal. May 11, 2026) ("This Court has concluded in other pixel cases that similar allegations are sufficient to plead standing, either based on alleged harm like intrusion upon seclusion or a legal interest in unjustly earned profits.").

## II. Plaintiff Pleads An Intangible Privacy Injury.

When assessing whether an intangible harm is sufficiently concrete, courts look to whether the alleged harm bears a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 424-25. Although "the common law offers guidance" it "does not stake out the limits," provided that the harm alleged "pose[s] the same kind of harm that common law courts recognize[.]" *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462-63 (7th Cir. 2020) (Coney Barrett, J.) (cited approvingly in *TransUnion*). "An 'exact duplicate' is not required, and many courts require a match only in the kind of harm and not the degree." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

With respect to this case in particular, relevant common law interests include:

- The right to be free from trespass on one's property interests. *Popa*, 153 F.4th at 791, n.5 (recognizing that online tracking technology could trespass on a possessory interest if it "operate[d]" on "an individual's computer").
- The right to be free from intrusion upon seclusion, including "eavesdropping and spying." *Gadelhak*, 950 F.3d at 462 (Coney Barrett, J.) (cited approvingly in *TransUnion*).

- An individual's right to "control [] information concerning his or her person." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 762-63 (1989) (discussing the "individual interest in avoiding disclosure of personal matters"); *In re Facebook, Inc. Internet Tracking Litig*. ("*Facebook Tracking*"), 956 F.3d 589, 599 (9th Cir. 2020) ("A right to privacy encompass[es] the individual's control of information concerning his or her person.").

For example, in *Facebook Tracking*, the plaintiffs alleged that the defendant intercepted their online browsing activities across multiple websites and created detailed profiles for marketing purposes. *Facebook Tracking*, 956 F.3d at 598-99. Based on those allegations, the plaintiffs asserted claims under the ECPA and CIPA. *Id.* In evaluating Article III, the Ninth Circuit: (a) identified a historical privacy interest, noting that "violations of the right to privacy have long been actionable at common law" and "[a] right to privacy encompasses the individual's control of information concerning his or her person"; (b) found that Congress and the California legislature intended to protect that historical privacy via the ECPA and CIPA; and (c) held that the interception of an individual's browsing activities for the purposes of creating marketing profiles alleged a concrete injury to that right. *Id.*

Conversely, in *Popa*, a plaintiff alleged that a pet website used "session-replay technology" to capture a consumer's interactions with the website. *Popa*, 153 F.4th at 786. The information recorded by the technology was anonymous and not personally identifiable or private. *Id.* at 787 & n.1 (website used "masking software" to configure the session-replay technology to exclude the user's "street number and zip code"); *id.* at 791 ("Popa identifies no … private information collected by [the session-replay technology]."). The technology was for the website's own analytical purposes (rather than marketing for other companies). *Id.* The *Popa* plaintiff failed to explain how her alleged harm was analogous to a common law privacy interest.

*Id.* at 791. Instead, she argued for a categorical rule that "a plaintiff necessarily enjoys Article III standing when suing under a statute that protects a substantive right to privacy." *Id.* at 792. The Ninth Circuit rejected that "categorical rule" on the grounds that the Supreme Court's decision in *TransUnion* requires federal courts to "assess whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at 793-94 (internal quotations omitted).

As courts in this District have since observed, the tracking at issue in *Popa* was limited to "plaintiff's non-sensitive interactions with a single website," *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026), and "did not involve any dissemination of the 'session-replay' beyond the defendants' own use," *Dellasalla v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, Dkt. No. 58 at 5 (April 21, 2026). "*Popa* did not set out a new rule of law for Article III standing, but rather applied the same common law rules to the individual circumstances of that case." *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 863 n.5 (N.D. Cal. 2026). Indeed, *Popa* confirmed that the Ninth Circuit's decision in *Facebook Tracking*—where it reasoned that Facebook's continued nonconsensual tracking of users "in order to receive and compile [the plaintiffs'] personally identifiable browsing history . . . no matter how sensitive or personal" was sufficient to establish a concrete injury—"remains good law." *Deivaprakash v. Conde Nast Digital,* 2025 WL 2779193, at *1 (N.D. Cal. Sep. 30, 2025) (quoting *Facebook Tracking*, 956 F.3d at 598).

The tracking at issue in this case was far more invasive than that alleged in *Popa*. The Sojern Tracking Pixel was installed and surreptitiously operated on Plaintiff's computer. SAC ¶¶ 4, 21, 25, 27-28. Once there, it intercepted the contents of Plaintiff's communications with hotels and transferred that information to third-party Sojern. SAC ¶¶ 4, 21, 32. The information personally identified Plaintiff, and included information that "identified the relevant hotel ID, hotel name/location,

hotel room price, number of rooms, check in date, check out date, and the fact that Plaintiff Crano completed her reservations." SAC ¶¶ 4, 52, 56-57. After receiving this information, Sojern used it to "create rich, deep profiles on individual travelers, including to identify those individuals' intended purchases and where they will be and when" so that Sojern could "sell [its] marketing services to **other travel companies** that want to market products to the same highly specific audiences." *Id.* ¶ 36 (emphasis added); *see also id.* ¶¶ 36-38, 41-42, 59. Sojern looks for "real-time signals," such as "booking windows, and destination trends," to identify individuals with the "intent to make a certain purchase," or the "intent to go to a specific destination," to "create granular audience segments that reflect actual traveler intent" to make "more targeted and efficient media buys for Sojern's clients." *Id.* ¶¶ 37-38.

This conduct injured numerous common law privacy interests. For starters, placement of the Sojern Tracking Pixel on *Plaintiff's computer* is analogous to a common law trespass injury. *Popa*, 153 F.4th at 791 n.5 (recognizing that trespass could form the basis for Article III standing where online tracking technology "operate[d]" on "an individual's computer"). The non-consensual eavesdropping is analogous to intrusion upon seclusion. *Gadelhak*, 950 F.3d at 462 (tort of intrusion upon seclusion addressed "eavesdropping and spying"). And surreptitiously collecting Plaintiff's travel preferences and itineraries to create rich and detailed marketing profiles for pecuniary gain and use by *other* companies injured Plaintiff's right to control of information concerning her person. *Facebook Tracking*, 956 F.3d at 599 (similar profiling injured "the individual's control of information concerning his or her person."); *see also Dellasalla*, No. 3:25-cv-03470-JSC, Dkt. No. 58 at 5 (Article III standing where defendant "collected detailed video viewing information to package individuals into audiences" for marketing and pecuniary gain); *In re Meta Android Priv. Litig.*, 2026 WL 1279416, at *4 (similar).

Ignoring trespass, and the right to control information concerning her person, Sojern focuses instead on intrusion upon seclusion, arguing that the analogy fails because Plaintiff had no reasonable expectation of privacy. ECF 72 at 3-6. As a threshold point, Plaintiff asserts a *claim* for intrusion upon seclusion, as well as other claims that have elements tracking the reasonable expectation of privacy (*e.g.*, CIPA § 632). It is black letter law that, when analyzing Article III standing, courts "**accept as valid the merits of [the plaintiff's] legal claims**," *Cruz*, 596 U.S. at 298 (emphasis added); *Idaho Conservation*, 83 F.4th at 1189 (same). It is hard to see how the Court can simultaneously *accept* that Plaintiff has pled a valid claim for intrusion upon seclusion, and valid statutory claims requiring a reasonable expectation of privacy, while crediting Sojern's argument that the claims are not analogous to intrusion upon seclusion because Plaintiff had no reasonable expectation of privacy.

In any event, Plaintiff pleads a reasonable expectation of privacy. As discussed at length in Plaintiff's Rule 12 brief, Plaintiff's alleged expectation of privacy was reasonable for numerous independent reasons, including that: (a) travel itineraries are inherently sensitive as they inform third parties when someone will and will not be at home and where they will be; (b) the hotels told consumers they would *not* share the information; (c) because of the sensitivity of the information the California legislature passed a statute prohibiting its disclosure (which informs *Plaintiff's* expectation of privacy regardless of whether it was the hotels, rather than Sojern, that violated the statute). *See* SAC ¶¶ 47, 61-70. Indeed, in a materially similar case, an Article III court in this Circuit recently recognized that: "a person reasonably expects details regarding where she is traveling, including the number of guests, destination, and number of rooms, would remain confined to the parties." *Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *8 (C.D. Cal. Mar. 31, 2026).

Further supporting Plaintiff's expectation of privacy (and the highly offensive nature of Sojern's conduct) are the separate California and federal statutes—CIPA and the ECPA—prohibiting the non-consensual interception of the contents of other people's communications. True, the legislatures' judgment to prohibit that conduct is not *dispositive* of Article III, but it remains "important" and "instructive." *Spokeo*, 578 U.S. at 340–41 ("important"); *TransUnion*, 594 U.S. at 425 ("instructive"); *cf. Dellasalla*, No. 3:25-cv-03470-JSC, Dkt. No. 58 at 5-6 (finding statute further supported concrete injury). Both the Ninth Circuit and the California Supreme Court have recognized that the wiretapping/eavesdropping laws codify important historical privacy rights. *Facebook Tracking*, 956 F.3d at 598 ("Congress and the California legislature intended to protect these historical privacy rights when they passed the Wiretap Act … and CIPA"); *Ribas*, 38 Cal. 3d at 360–61 (analyzing CIPA and noting that "secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.").

Because Plaintiff's expectation of privacy was reasonable, the question of whether Sojern's conduct was "highly offensive" should not be adjudicated at the pleading stage. *Dellasalla*, No. 3:25-cv-03470-JSC, Dkt. No. 58 at 7. In any event, surreptitiously installing tracking technology on Plaintiff's computer so that Sojern could intercept her communications to learn her travel preferences and itineraries for the purpose of creating a marketing profile that could be monetized by other companies is highly offensive conduct that violates social norms. *Cf. id.* (similar allegations were "a serious invasion of privacy."); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1088 (N.D. Cal. 2025) (similar).

Dated this 15th day of May 2026. DWOSKIN WASDIN LLP

*/s/ Eric S. Dwoskin*

Eric S. Dwoskin (admitted *pro hac vice*)

*Attorneys for Plaintiff and the Putative Class*

**E-FILING ATTESTATION**

I, Eric S. Dwoskin, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Eric S. Dwoskin*
Eric S. Dwoskin